No. 24,262.

Louis B. Leach, *Appellee,* v. D. F. Urschel, *Appellant.*

SYLLABUS BY THE COURT.

1. Promissory Note—*Negotiability—Time of Payment.* A promissory note plainly reciting the time when it is to fall due is not rendered uncertain as to time of payment and consequently nonnegotiable because of a stipulation that it is to bear interest at "eight per cent. after due until paid."

2. Same—*Waiver of Presentment for Payment.* Recitals of waiver of "presentment for payment, demand, protest, or nonpayment" in a promissory note neither affect nor impair its negotiability.

3. Same—*Stipulation for Attorney's Fees Not Interest.* A stipulation in a promissory note that if the note is not paid at maturity it may be placed in the hands of an attorney for collection and that 10 per cent of the

amount due may be added and will be paid by the maker, while void under our statute (Gen. Stat. 1915, § 6475), does not destroy the negotiable character of the instrument.

4. SAME—*Indorsement Gave No Notice of Infirmities in Note.* On the back of a promissory note above the defendant's indorsement were the words: "There are no conditions offsetting this note, and any bank, banker, corporation or individual has my permission to purchase it." *Held,* that such recital did not affect or limit the defendant's liability as indorser; and *held,* also, that it gave no warning of any infirmity in the instrument.

5. SAME—*Note Payable to the Order of the Maker.* When a promissory note payable "to the order of myself" is duly indorsed by the maker and set afloat in the channels of commerce it is subject to the law of negotiable instruments.

6. SAME—*Prima Facie Right to Recover—Demurrer Properly Overruled.* In an action on a negotiable promissory note, when a plaintiff has shown his ownership and acquisition of it before maturity, his *prima facie* right to recover on it is established, and a demurrer to plaintiff's evidence is properly overruled.

7. SAME—*Issues Raised by General Denial—Indorsement of Note Not Put in Issue.* A verified answer to a petition in an action on a negotiable promissory note contained a general denial, a special defense of fraud, and admission that defendant had executed and delivered the note in reliance on fraudulent misrepresentations, and alleged that "there was no legal indorsement on said note by defendant to complete the contract of note, indorsement or delivery thereof, and no legal indorsement that would carry note payable to order free from equities or defenses." *Held,* that such verified answer did not put the fact of indorsement in issue, nor raise an issue as to the genuineness of the indorser's signature.

8. SAME—*Excluded Evidence—Not Error.* Excluded documentary evidence and deposition examined, and *held,* that, conceding their competency, they were insufficient in themselves to establish the defense pleaded and relied on to defeat the plaintiff's action.

9. SAME. Error cannot be based upon the exclusion of testimony unless at some stage of the proceedings the testimony is produced in the trial court. A mere statement by counsel of what he proposes or intends to prove is not sufficient (Civ. Code, § 307; *Scott v. King,* 96 Kan. 561, 566, 152 Pac. 653; *The State v. Ball,* 110 Kan. 428, 432, 204 Pac. 701).

Appeal from Marion district court; CASSIUS M. CLARK, judge. Opinion filed January 6, 1923. Affirmed.

*John Madden, John Madden, jr.,* and *J. T. Rogers,* all of Wichita, for the appellant; *Dennis Madden,* of Topeka, of counsel.

*W. H. Carpenter,* and *W. R. Carpenter,* both of Marion, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action on the following promissory note:

"$2,500.00.                                    Florence, Kansas, 5/27, 21.

"Three months after date I promise to pay to the order of myself twenty-five hundred and no/100 dollars at the office of ——————, for value received, negotiable and payable without defalcation or discount and with interest at the rate of 8 per cent per annum until due, and eight per cent after due until paid.

"We, the makers, indorsers, assignors, and sureties, severally waive presentment for payment, demand, protest, or non-payment of this note.

"I or we further agree that should this note be placed in the hands of an attorney for collection after maturity I or we will pay in addition thereto as attorney fees an amount equal to 10 per cent of the balance due.

(Name.) D. F. Urschel."

. . . [Revenue stamps.]

"On back of note: 'There are no conditions offsetting this note and any bank, banker, corporation or individual has my permission to purchase the same.                                    D. F. Urschel.'

"T. S. McQueen."

The plaintiff alleged he purchased the note for a valuable consideration, in due course of business, before its maturity, and that he was the owner and holder of it.

The defendant answered, pleading certain infirmities in the note arising from certain fraudulent conduct of an Associated Mill & Elevator Company for the sale of its stock for notes like the one in suit, and other matters which, so far as necessary, will be noted later in this opinion.

Issues were joined and the cause was tried before a jury. The plaintiff adduced evidence to show his ownership and possession of the note before maturity, and rested. Defendant's demurrer to the evidence was overruled. Defendant then offered a mass of documents in evidence tending to show the inception and history of a fraudulent undertaking on the part of certain persons who were floating the stock of a trust entitled, "Associated Mill & Elevator Company," certain pleadings in an insolvency and receivership case involving this company, and a deposition given by its receiver touching its financial affairs and records was likewise offered. This evidence, liberally construed, and disregarding consideration of its challenged competency, may be construed to show that those responsible for putting forth the documents pertaining to the trust had misrepresented the facts concerning its assets and liabilities. The trial

court excluded these documents and deposition, and directed a verdict for plaintiff.

Defendant appeals.

The first question of importance to be determined is involved in defendant's contention that the note sued on is not a negotiable instrument. He argues, first, that the recital that the note is to bear "eight per cent after due until paid" renders the date of payment uncertain, which destroys its negotiability. While the authorities are not uniform on this point (*Bracken v. Fidelity Trust Co.,* 54 L. R. A. 1915 B 1216, and notes), this court has virtually ruled to the contrary. In *Parker v. Plymell,* 23 Kan. 402, it was held that a promissory note was not rendered nonnegotiable because of a stipulation that it would bear 12 per cent interest after maturity. To the same general effect were *Gilmore v. Hirst,* 56 Kan. 626, 44 Pac. 603, and *Clark v. Skeen,* 61 Kan. 526, 60 Pac. 327; and see, also, *Crumo v. Bergan,* 97 Mich. 293, 37 A. S. R. 345.

Touching the recitals of waiver of presentment, demand and protest, such waivers are quite common in printed forms of promissory notes; they are recognized by the negotiable instruments act itself and have no effect on negotiability. (Gen. Stat. 1915, § 6532, as amended by ch. 244, Laws of 1917, §§ 6609, 6638, 6639.)

(*Glaze v. Ferguson,* 48 Kan. 157, 159, 29 Pac. 396; *Holmes v. Winters,* 108 Kan. 227, 194 Pac. 639; *Fisher v. Price,* 37 Ala. 407; *Farmers' Exch. Bank v. Altura, etc., Co.,* 129 Cal. 263; *State, ex rel. Parks v. Hughes et al.,* 19 Ind. App. 266; *Savings Bank v. Hanna,* 124 Iowa, 374; *Bank of Morgan City v. Herwig,* 121 La. Ann. 514; *Parshley v. Heath,* 69 Maine, 90; *Wolford v. Andrews,* 29 Minn. 250; *Annville Nat. Bank v. Kettering,* 106 Pa. St. 531, 533; *Central Bank & Trust Co. v. Hill,* [Tex. Civ. App.] 160 S. W. 1097; 8 C. J. 701, 702.)

Touching the stipulation that the note might be placed in the hands of an attorney for collection after maturity and that an attorney's fee of 10 per cent on the sum due would be paid, this recital is without legal significance. Even a stipulation authorizing a confession of judgment would not impair negotiability. (Laws of 1917, ch. 244.) The right of the holder to place the note in an attorney's hands for collection is in no wise dependent on this stipulation. This part of the recital neither adds to nor diminishes the holder's legal rights. And as to the promise to pay an attorney's fee, that part of

Leach v. Urschel.

the stipulation is wholly void (Gen. Stat. 1915, § 6475), but such a recital does not destroy the negotiability of a promissory note.

(*Seaton v. Scovill*, 18 Kan. 433, syl. ¶ 1; *Gilmore v. Hirst*, 56 Kan. 626, 628, 44 Pac. 603. See, also, note in L. R. A. 1916 B 675, 684, 685; 8 C. J. 148, 150.)

Nor can it be said that the recitals on the back of the note impair its negotiability. The negotiable-instruments act recognizes that indorsers may, as they frequently do, qualify the scope of their indorsements, but the negotiable-instruments act provides that—

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by apppopriate words his intention to be bound in some other capacity." (Gen. Stat. 1915, § 6590.)

(*Farnsworth v. Burdick*, 94 Kan. 749, 147 Pac. 863; *Plow Co. v. Losey*, 104 Kan. 400, 179 Pac. 358.)

Now it cannot be said that the recital on the back of this note indicated any intention on the part of the signer to be bound in any other capacity than as indorser, and it is not discernable that the recital had any significance which would add to or detract from the liability of an indorser under ordinary rules of law. Certainly the indorser's assurance that there were "no conditions offsetting this note" was not a warning that there was some infirmity in it. It did not destroy the note's negotiability.

But it is urged that because this was a "myself" note, it is governed by somewhat different principles than those applied to promissory notes where the maker and payee are different persons. The convenience of tradesmen and the wants of the commercial world have necessitated the use of these "myself" notes. The negotiable-instruments act gives countenance to them and prescribes what is necessary to their completion.

"  .  .  . Where a note is drawn to the maker's own order, it is not complete until indorsed by him." (Gen. Stat. 1915, § 6712; see, also, Gen. Stat. 1915, § 6642.)

In 3 R. C. L. 877, 880, it is said:

"But an instrument is not the less a bill of exchange because all the parties to it in the character of drawers, payees and drawees are not different persons. Ordinarily, a bill of exchange has, in the first instance, three parties to it, the drawer, the drawee, and the payee. It is not unusual, however, for the drawer to make the bill payable to his own order, and then indorse it and put it into circulation. Indeed, a bill will be valid where there is only one party to it, for a man may draw on himself payable to his own order. And of course a note

payable to the order of the maker is negotiable. . . . The practice of issu-ing such paper has now become very common, and its validity, when indorsed by the maker or drawer, is not questioned."

(*Crane v. Downs*, 108 Kan. 599, 196 Pac. 600; *Moses v. National Bank of Lawrence Co.*, 149 U. S. 298, 37 L. Ed. 743; 8 C. J. 176.)

Most of the other matters argued in this case are primarily based on the assumption that this note was nonnegotiable, and since we have seen that such main contention is incorrect, they may readily be disposed of. Once the plaintiff had proved his ownership and acquisition of the note before maturity, his *prima facie* case was established. And the testimony of Fisher, the plaintiff's son-in-law, to that effect was competent (*Bank v. Robinson*, 93 Kan. 464, 144 Pac. 1019), and since it was not shaken by any cross-examination it was sufficient. Moreover, the note being negotiable and properly indorsed, and plaintiff having possession of it, there was a presumption that he was the owner and that he had acquired it for value and in due course and before maturity. (*National Bank v. Emmitt*, 52 Kan. 603, 35 Pac. 213.) No further burden could be imposed on the holder (*Bank v. Myrick*, 108 Kan. 191, 193, 194 Pac. 648), until defendant had produced some substantial evidence showing fraud or other infirmity constituting a defense. (*Beachy v. Jones*, 108 Kan. 236, 241, 195 Pac. 184.)

But it is urged that defendant's answer was verified, which put the matter of defendant's indorsement in issue. However, we do not find any denial of the indorsement in the answer. While there was a general denial, its force was rendered nugatory by the other matters pleaded.

(*Felix v. Railway Co.*, 60 Kan. 467, 57 Pac. 128; *Elliott v. Hudson*, 84 Kan. 7, 113 Pac. 307; *Rust v. Rutherford*, 95 Kan. 152, 159, 147 Pac. 805.)

After alleging certain false representations on the part of the Associated Mill & Elevator Company and those acting in its behalf, defendant alleged:

"2. That defendant, relying upon such representations, gave ten notes in the sum of $2,500.00 each, one of which is the note in controversy. . . .

"4. Defendant, further answering, states that said note so executed and delivered by him as aforesaid, according to its terms and conditions, is an instrument unknown to the law merchant. . . .

"5. Defendant, further answering, alleges . . . that the memorandum or agreement on back of note is such as to impart actual notice or knowledge of such acts in relation to said note as hereinbefore alleged as to put the plain-

Leach v. Urschel.

tiff upon his notice as to the infirmity or defect of said note, and there is no legal indorsement on the part of the defendant to complete contract of note, indorsement or delivery thereof, and no legal indorsement that would carry note free of equities or defenses."

From these excerpts it is obvious that defendant did not intend to deny his indorsement. He raised no issue of fact about the genuineness of his signature as indorser. He merely swore to his opinion or conclusion that there was no *legal* indorsement, not that there was no indorsement, nor that the words "D. F. Urschel" on the back of the note were not his signature.

Defendant complains of the exclusion of the documents and deposition which he offered in evidence. Granting their competency, they did not go far enough to constitute a defense. Defendant omitted entirely to offer any testimony or other evidence that any false representations of fact were made to him, and produced no evidence that he executed and delivered the note in reliance thereon. When the trial court rejected the documents and deposition, defendant rested. It does appear that defendant took the witness stand, but an objection to the introduction of evidence was sustained. Counsel for defendant then dictated a lengthy statement into the record as to what he proposed to show by the witness. At its conclusion, the following colloquy occurred:

"The Court: Do you desire as a part of this offer to show that the plaintiff was not the owner and holder of this note at the time of the commencement of this action?"

Counsel for Defendant: "Not by this witness. I am going to show that by other witnesses. By other witnesses I expect to show and will make the offer here in regular order, that the plaintiff was not the owner and holder of the note in controversy, in due course. That he had knowledge of the defective title and did not purchase the same in good faith.

"Mr. Rogers: The burden in that instance would rest on the plaintiff to show that he is the owner and holder in due course, should it go that far."

Counsel for Defendant: "I will let the record stand as I have it."

The Court: "Refused."

Neither then nor thereafter, nor in support of the motion for a new trial, was any testimony forthcoming which would tend to establish the defense outlined in the statement of defendant's counsel nor as pleaded in his answer. It is familiar law that in such a state of the record there is nothing concerning the exclusion of evidence which this court can review. (*State v. Ball*, 110 Kan. 428, 432, 433, 204 Pac. 701.) It is entirely proper and good practice for an at-

torney to apprise the court of, what he hopes or expects·to prove by a witness (*Eagon v. Eagon,* 60 Kan. 697, 57 Pac. 942), and where the rejected evidence is documentary and is preserved the supreme court can examine it and its formal reoffering in support of the motion for a new trial may be ignored (*Bank v. Seaunier,* 104 Kan. 7, 8, 178 Pac. 239; *Bellport v. Harkins,* 107 Kan. 454, 192 Pac. 730) ; also, where the testimony of a witness has been introduced or partially introduced and is then excluded, it is unnecessary to reproduce it on the hearing of the motion for a new trial, since the trial court knows what the evidence is and the supreme court can gather its substance (*Treiber v. McCormack,* 90 Kan. 675, 136 Pac. 268) ; but the purpose of the statute, (Civ. Code, § 307)—

"Was to prevent the defeated party from seeking a reversal for error in the exclusion of evidence which, had the ruling been in his favor, he might not have been able to produce." (*Treiber v. McCormack,* supra, p. 680.)

In *The State v. Ball,* supra, it was said:

"The rejection of this tender of evidence cannot be the basis of error. What the witness would have testified to was never disclosed. It was not produced in evidential form as an affidavit, deposition, nor upon oral examination when the motion for a new trial was presented. The want of this is not supplied by an oral address of counsel to the trial judge, saying: 'Your honor, we want to show this, that, or the other thing by this witness.' The statement of counsel as to what he can prove if permitted to do so will not suffice for the evidence itself." (p. 432.)

In view of the entire absence of any evidence, by affidavit, deposition, or oral testimony, to show what defendant might have proved if he had been permitted to do so, no error can be based thereon (*Scott v. King,* 96 Kan. 561, 566, and citations, 152 Pac. 653) ; and as the documentary evidence and deposition which were offered and rejected were insufficient in themselves to constitute a defense, an instructed verdict was proper (*Bank v. Myrick,* supra) ; and the result is that the record discloses nothing in the nature of prejudicial error which would justify a disturbance of the judgment. It is therefore affirmed.