No. 25,680.

THE PEOPLES STATE BANK OF HOISINGTON, *Appellee,* v. THE HOISINGTON COÖPERATIVE MERCANTILE MANUFACTURING ASSOCIATION et al., *Appellants.*

SYLLABUS BY THE COURT.

1. APPEAL AND ERROR—*Promissory Notes—Capacity of Signatories—Requisites on Appeal.* In an appeal from a judgment rendered in favor of the payee of promissory notes against certain defendants who had signed the notes either officially on behalf of a, corporation as principal debtor and maker, or individually as sureties, guarantors or otherwise, or who had signed the notes both officially for the corporation and individually, the objections urged against the consideration of the appeal on its merits considered, and appellee's motion to dismiss overruled.

2. SAME—*Joinder of Parties on Appeal.* Under the code revision of 1909, the fact that all defendants against whom a joint and several judgment on a contractual obligation for money was rendered do not join in the appeal and are not made parties thereto is not a good ground on which to base a motion to dismiss the appeal, and it is held that the precedents to a contrary effect, based on the appellate procedure before the revision of 1909, are no longer controlling.

3. SAME—*Notice of Appeal—Adverse Parties.* Under the provision of the revised code of 1909 (R. S. 60-3306), which requires that notice of an appeal must be served on "all adverse parties whose rights are sought to be affected by the appeal," an adverse party is a party to the litigation to whose interest it is that the judgment of the trial court be upheld and who is interested in opposing the relief sought by the appellant; and *held,* that certain defendants against whom a joint and several judgment for money was rendered in the trial court who were content to abide that judgment are not adverse parties to other codefendants against whom the same judgment was rendered and who do appeal from that judgment.

4. PLEADING—*Amended Petition—Motion to Strike.* Defendants' motion to strike an amended petition on grounds noted in the opinion was not improperly overruled.

5. SAME—*Belated Pleadings—Discretion of Court.* Rule followed that a motion for leave to file belated pleadings is addressed to the trial court's discretion, and ordinarily a denial of such motion is not error.

6. APPEAL AND ERROR—*Exclusion of Evidence—Perfecting Appeal.* Rule followed that the exclusion of evidence cannot be a basis on which to establish reversible error, unless the excluded evidence is brought into the record in conformity with the civil code.

7. EVIDENCE—*Promissory Note—Capacity of Signatories—Parole Evidence.* A defense to promissory notes, which never passed out of the hands of the original payee, founded on pleadings and evidence that certain defendant signatories had only intended to sign on behalf of the principal corporate debtor and maker whose officers they were, and that the payee's cashier represented to them that they were only signing the note in such official capacity and not individually, and that the notes were not to be considered as obligations completely executed and unconditionally delivered to payee until other officers of the corporation should also sign, does not violate the rule that parole evidence may not be given which varies the terms of a written instrument, and evidence to such effect is good as against a demurrer thereto.

8. TRIAL—*Weight and Sufficiency of Evidence—Question for Jury.* The record examined, and *held,* that under the pleadings and the evidence adduced in behalf of the defense to an action on promissory notes in the hands of the original payee, there were issues of fact which required that the cause be submitted to a jury for determination.

Appeal from Barton district court; CLYDE R. DOUGLASS, judge. Opinion filed March 7, 1925. Reversed.

*G. W. Holland, Clifford Ruthven Holland,* both of Russell, and *D. A. Banta,* of Great Bend, for the appellants.

*William Osmond, Elrick C. Cole, T. B. Kelley,* all of Great Bend, and *J. B. Prose,* of Hoisington, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff brought this action to recover on an indebtedness of $2,500 evidenced by three promissory notes, the first of which evidenced the original obligation to the plaintiff bank. The second and third notes were successively given as collateral to the first and covered the same indebtedness.

There was some difference of identity in the personnel of the officials who signed the three notes for the defendant association, and the groups of individual signers or endorsers of the three notes were not quite identical.

The obligors of the first note signed as follows:

"P. O. Address, Hois.

"Hois. Co-Merc. Mfg. Assn ⎫<br>
C. W. Scott          ⎪<br>
Theo Gerndt        ⎬ *Ex. Com.*<br>
D. W. Humphrey     ⎪<br>
Lincoln Harper      ⎭

(Endorsed) "Theo. Gerndt, C. W. Scott, A. M. Wooden, C. E. Kline, E. W. Reed, D. W. Bostwick, J. H. Roemer, C. A. Wilson, Lincoln Harper, W. B. White, John Meyers, D. W. Humphrey."

The obligors of the second note signed as follows:

"Hoisington Co-op. Merc. & Mfg. Assn., by C. E. Funk, Mgr.<br>
P. O. Address Hois.<br>
Theo. Gerndt, D. W. Humphrey, Lincoln Harper, C. W. Scott.

(Endorsed) "Theo. Gerndt, C. A. Wilson, D. W. Humphrey, Lincoln Harper, C. W. Scott, W. Ward, A. M. Wooden."

The obligors of the third note signed as follows:

"H. R. Ennis, J. W. Watson, ⎱<br>
M. E. Ferrel, C. A. Wilson ⎰ *Ex. Com.*<br>
"Board of Directors<br>
Hoisington Co-Op. Merc. & Mfg. Assn. P. O. Address Hois.

(Endorsed.) "Payment guaranteed, protest, demand and notice of non-payment waived. C. E. Kline, J. H. Roemer, E. W. Reed, C. W. Scott, Theo. Gerndt, D. W. Humphrey, W. Ward, John Meyers, Lincoln Harper."

Defendants filed motion to strike and to make more specific certain allegations of the petition. These and their demurrer being overruled, defendants answered that the indebtedness represented by the notes sued on was the sole indebtedness of the defendant mercantile association, and that all the other defendants were members of the board of directors and of the executive committee of

the defendant association and authorized to execute the first note in its behalf as its officials, and that they signed it in no other capacity. They also alleged that plaintiff knew these facts and accepted the note with that understanding. They further alleged that the plaintiff's cashier induced them to sign the note in the manner and form in which they did execute it by representing to them that they were not assuming any personal obligation in so doing; and that it would be a great accommodation to the plaintiff if they would so execute the same, and that defendants relied on such representations of plaintiff's cashier, and that there was no consideration moving from plaintiff to the answering defendants, and that the only reason their names did not appear on the face of the note as only officially executed by them was that there was no room on the face of the note therefor. Concerning the second and third notes, defendants alleged that they were intended to be signed by them only in an official capacity and not otherwise, and that they signed as they did upon assurance of plaintiff's cashier that he would secure the names of each and all of the fifteen members of the mercantile association's board of directors, and that the plaintiff bank would not accept the second and third notes as collateral until all of such signatures had been procured, but that plaintiff's cashier never tried to secure the signatures of all the members of the board of directors and did not intend to do so at the time he so agreed.

Answering specifically as to the first note, defendants, in part, alleged:

"They aver that at the time of the execution and acceptance of said note, the plaintiff, through its cashier, W. B. Lucas, represented to these answering defendants, and to each of them, that he knew that they were members of the said board of directors and of the executive committee of said association, and as such that they were authorized to make and execute the same on behalf of the said association; that the time of the execution thereof he represented to them and to each of them that because of their official relations to said association they were not assuming any liability on said note; if they would sign the same the plaintiff would not look to them or either of them to the note or any part of it; that if they would sign the same the plaintiff would never trouble them or either of them to pay the same or any part thereof; that the execution by them as such members of the board of directors and of the executive committee of said association was a mere matter of form; that he knew that said association was reliable and would pay said note; that it would be a great accommodation to the plaintiff if he [they] would execute the same. . . . They aver that each and every of the said representations

were made to them for the purpose of deceiving them and each of them; that at the time they were so made to them by the said cashier the said cashier and the plaintiff bank intended by means thereof to mislead and deceive the defendants and each of them and to try to enforce payment of said note by these defendants; that said representations were false and untrue and known by the plaintiff to be false and untrue. That the defendants had confidence in the said cashier and believed the said representations to be true and relied upon them as true, and in consequence and by reason thereof they executed the said note in the manner and for the purpose aforesaid, and for no other purpose.

"5th. These answering defendants further aver that the execution of said note by them and in the manner and under the circumstances aforesaid was without any consideration whatever to them or either of them, and was executed purely as a matter of accommodation to the plaintiff as aforesaid.

"6th. They further aver that they did not execute the said note as principals, but merely in the capacity of officials of the said association as aforesaid, and they aver that the only reason why their names do not appear upon the face of the said note is that there was not room sufficient to enable them to place them thereon."

On the issues joined, evidence was adduced in behalf of defendants covering some of the matters pleaded in their answer. Plaintiff's demurrer thereto was sustained and judgment was entered against the mercantile association and fourteen individual defendants. These fourteen were W. B. White, J. W. Watson, J. H. Roemer, R. W. Bostwick, M. E. Ferrel, Theo. Gerndt, C. W. Scott, D. W. Humphrey, Lincoln Harper, W. Ward, C. E. Kline, John Meyers, C. A. Wilson, and J. L. Piper, administrator of the estate of E. W. Reed, deceased.

Nine of the individual defendants filed a motion for a new trial, which was denied, and they appeal. As to these nine appellants, and giving their signatures to the notes the usual significance attaching to them, in view of the manner in which they did sign them, it appeared from the instruments themselves as indicated above, that—

*Theo. Gerndt* signed the first and second notes officially for the defendant corporation, and also signed all three of the notes individually.

*C. W. Scott* signed the first and second notes officially and signed all three of the notes individually.

*D. W. Humphrey* signed the first and second notes officially and all three of the notes individually.

*Lincoln Harper* signed the first and second notes officially and all three of the notes individually.

*W. Ward* signed the second and third notes individually.

*C. E. Kline* signed the first and third notes individually.

*John Meyers* signed the first and third notes individually.

*C. A. Wilson* signed the third note officially and the first and second notes individually.

*J. L. Piper,* Admr., for

*E. W. Reed,* deceased, who signed the first note individually.

The appellee moves to dismiss the appeal for reasons which will be noticed:

First. Appellants' abstract lacks a certificate of counsel reciting that it is a true and correct abstract of the record, and the signatures of counsel thereto are likewise wanting. To dismiss an appeal on this ground would be rather drastic, when it is apparent that the defect is a mere inadvertence.

Second. The abstract includes a so-called supplemental answer in the abstract, which was not permitted to be filed, but that is of no importance and would not justify a dismissal.

Third. The omission of matters from the abstract which in a broad review might be important does not require a dismissal. The want of them merely limits the scope of the matters to be reviewed.

Fourth. The omission of the names of Bostwick and Ferrel from the roll of defendants against whom judgment was rendered is unimportant, as neither of these persons has appealed.

Fifth. Appellee urges that there is a defect of parties to this appeal. It will be noted that there are only nine appellants, whereas there were fourteen defendants to the joint judgment. Neither the defendant corporation nor W. B. White, J. W. Watson, J. H. Roemer, R. W. Bostwick, nor M. E. Ferrel has appealed. Under the old code such a situation would defeat the jurisdiction of the supreme court and prevent a review of the judgment. (*Norton v. Wood,* 55 Kan. 559, 40 Pac. 911.) Under the old practice a proceeding in error—a new action—was brought in the supreme court by a petition in error to review the judgment of the trial court as shown by a case-made attached thereto, and a summons was issued thereon. Such a case-made could only be reviewed and the propriety of the trial court's jurisdiction thereon determined if all the parties to the action below whose rights might be prejudicially affected by the judgment of the reviewing court were made parties thereto. (*Hughes v. Miller,* 56 Kan. 183, 42 Pac. 696; *Pierce v. Downey,* 56 Kan. 250, 43 Pac. 223; *Van Laer v. Brick Works,* 56 Kan. 545, 43 Pac. 1134; *Manufacturing Co. v. Richardson,* 57 Kan. 661, 47 Pac. 537; *Leeper v. Pomeroy,* 58 Kan. 815, 49 Pac. 157; *Davis v. Byers,* 59 Kan. 773, 52 Pac. 79.) · In *Pitman et al. v. El-*

*wood* (Kansas, 1896), 44 Pac. 685, which was an action on a promissory note, the district court had rendered judgment in favor of Elwood against eight persons jointly. Seven of the defendants had given their promissory note to Culp, another defendant, and Culp had indorsed it to Elwood. The judgment was against the makers and Culp, the payee and indorser, jointly. Culp was not made a party to the proceding in error. This court held that where a judgment based on a note was rendered against a number of defendants jointly, among whom was the payee of the note, a petition in error in which such payee did not appear as a party would have to be dismissed on objection of defendant in error. But the new code substantially changed the nature of an appellate review. If some of the litigants whose interests are not adverse to the appellants are content with the measure of justice accorded them by the trial court, their nonappearance in the supreme court will not stay its hands to grant appropriate relief to those who invoke its jurisdiction. It will be noted that the cases which support the point urged by appellee are all old cases, and *Norton v. Wood,* supra, particularly relied on by appellee, was decided thirty years ago. Of course the new code does require that "all adverse parties whose rights are sought to be affected by the appeal" must be served with notice of the appeal. (R. S. 60-3306.) An "adverse party" under this code provision has been variously defined to be any party to the litigation, plaintiff, defendant or intervener, to whose interest it is that the judgment of the trial court be upheld; any party to the litigation who is interested in opposing the relief which the appellant seeks by his appeal. (*The Victorian,* 24 Ore. 121, 41 A. S. R. 838; 1 Words & Phrases, 2d series, 132 *et seq.,* 3 C. J. 1218 *et seq.*)

It must therefore be held that the fact that certain codefendants against whom the judgment complained of was rendered jointly and severally with these appellants have not joined in this appeal and are not parties hereto does not require and would not justify its dismissal.

Turning next to the errors assigned by appellants, they first complain of the overruling of their motion to strike the amended petition from the files because for the first time the alleged facts pertaining to the second and third notes were there pleaded, and this, they urge was a departure and in effect constituted three distinct causes of action against three different sets of defendants, no two of which were the same. Primarily and fundamentally, however, there

was but one cause of action—for the recovery of $2,500 and interest for moneys had and received, and the first note was merely an evidence of the indebtedness and the second and third notes were merely collateral to the first. The three notes were not unrelated independent instruments. · They were merely evidences that the divers signatories were bound to pay one debt of $2,500, some merely signing as officers of the debtor corporation and on its behalf, and others, perhaps, as sureties or guarantors or in some other capacity. We note that in this same motion to strike out all reference to the second and third notes, defendants also moved that plaintiff be required to set forth whether it held "any other collateral notes or other security" for the payment of the original note. Such a proposition was not consistent with the other features of the motion, and the court did not err in denying it in all its parts.

Complaint is made because the court denied appellants' belated request for permission to file a supplemental answer setting up a material alteration in the original note. This request was made after defendants had rested their case. While it was argued below and is argued here that the alleged alteration was·a belated discovery, the trial court ruled that the request came too late, and held informally as a finding of fact that defendants were fully apprised of the facts before they rested. The request was addressed to the trial court's discretion and its denial was not error. (*Matson v. Railway Co.*, 80 Kan. 272, 102 Pac. 254; *Macy v. City of Rosedale*, 112 Kan. 342, 211 Pac. 131.)

Defendants next complain of certain rulings of the trial court excluding evidence which might have shown the conditions under which they or some of them signed the notes, as well as to show they were accommodation makers. It is not easy to imagine how the defendants could have shown that they were accommodation makers. Their own evidence—indeed, even their pleadings—were that they never intentionally signed any of the notes except as officers of the corporation and in its behalf. But the point is unimportant because the excluded evidence which might or might not have shown these matters was not presented in support of the motion for a new trial, and so, of course, no error can be based on its exclusion. In *Leach v. Urschel*, 112 Kan. 629, 212 Pac. 111, it was held:

"Error cannot be based upon the exclusion of testimony unless at some stage of the proceedings the testimony is produced in the trial court. A mere statement by counsel of what he proposes or intends to prove is not sufficient

(Civ. Code, § 307; *Scott v. King,* 96 Kan. 561, 566, 152 Pac. 653; *The State v. Ball,* 110 Kan. 428, 432, 204 Pac. 701)." (Syl. ¶ 9.)

This same code rule of appellate review disposes of the error assigned on the trial court's rulings sustaining objections to questions put to defendants' witness, Lincoln Harper. This court has no means of knowing what Harper would have testified to. In *Leach v. Urschel,* supra, it was said:

"In view of the entire absence of any evidence, by affidavit, deposition or oral testimony, to show what defendant might have proved if he had been permitted to do so, no error can be based thereon." (p. 636. See, also, *The State v. Ball,* 110 Kan. 428, 204 Pac. 701.)

Coming next to what appears to be the most serious proposition involved in this appeal, it has to be noted that aside from the excluded matters which might have been shown by defendants and which are altogether unavailing because they were not brought into the record as the code provides (Civ. Code, § 307), the defendants did present testimony to show that the signatures of certain of these defendants were procured by the plaintiff's cashier under the pretense that they were merely signing the notes in their official capacity in behalf of the corporation; and there was testimony that the cashier, as an inducement to them to sign, assured them that he would hold the notes until they were signed by the entire directorate of the corporation. Of course this testimony was considerably discredited by the signatures on the notes themselves, for it is obvious that several of the defendants signed the notes twice, once possibly in a purely official capacity for the corporation (*Lonnon v. Batchman,* 103 Kan. 266, 173 Pac. 299, and citations), but a second time in no other apparent capacity than as individuals.

Yet there was testimony given in defendants' behalf which this court finds it impossible to ignore. Thus witness Scott, for defendants, testified:

"I was sent to the bank by the board of directors. I was a member of the board of directors and a member of the executive committee at that time. I went there to negotiate a loan for the Hoisington Coöperative Ass'n, and I asked Mr. Lucas if he would be willing to make the loan and he said he would. The loan was for $2,500. I told Mr. Lucas that if it was a personal note that I positively would not sign it. I talked at the time of the full committee signing the note. Mr. Lucas said that we could all sign on the back of exhibit 1 as members of the board of directors; he said that we should sign on the back of the notes as members of the board. I stated to Mr. Lucas that I positively would not sign a note in that way that could be made a personal note. He

said, 'No, I expect not.' He said that he would see that the entire board of directors signed the note."

### Witness Wilson, another director, testified:

"I told Mr. Lucas I had signed a note once and had had to pay it, and he says, 'You won't this one, for this signature is not for the purpose of the payment.' He said the purpose was to obtain the members of the board of directors to show that in the future it was by their authority that this note was issued and their approval—in other words issued by the approval of the board. He told me that I would not be responsible. He said he wanted all of the members of the board of directors; that all he wanted was the members of the board on this note—board of directors of the association. Mr. Humphrey and Mr. Lucas were present when I signed the note.

"In the renewal of the notes Mr. Lucas said that he wanted all the members on the previous note—the members of the board of directors—to keep the names that were on the first note; that all he wanted was the members of the board of directors; that in future if anything should come up that it was shown that it was by the approval of the board that this note was renewed and that he would keep the first one."

### Witness Wooden, another director, testified:

"Prior to the time that I signed the note Mr. Lucas says to me, Here's a Coöperative note; he says, you are one of the members of the board of directors; I want you to sign it while you are in here, and he got the note out; he had it in his desk; and I said, 'It won't do much good for me to sign it.' I says, 'I am no security.' He said that makes no difference; you are one of the board of directors. I ain't having you sign it as security; I am asking you to sign it as one of the members of the board of directors. He said he wanted all the members of the board of directors to sign the note. There were fifteen members of that board. I never knew that they had not all signed it until after this suit was commenced.

"I was again in the bank and Mr. Lucas told me that they had a renewal note there and he had it in his desk, and he handed me the note, and I looked at it in his desk, and he handed me the note, and I looked at it and asked him about the signatures on this note (plaintiff's exhibit B). There wasn't very many signatures on it, and he says, 'We are going to hold the original note until we get the signatures on the renewal note.' I hesitated, and he told me he would get the rest of the signatures, and so I signed the note—the renewal note. Mr. Lucas told me that he wouldn't accept the renewal note until the balance of the board did sign the renewed note."

There was other testimony to the same effect; and when defendants rested there was competent testimony in the record tending to show that some of the defendants had been misled by the plaintiff's cashier into signing the notes, or some of the notes, on the representation that they were signing them only in their official capacity as directors and in behalf of the corporation, which was in fact the debtor; and there

was competent testimony tending to show that the notes were to be held in abeyance by Lucas, cashier, and not accepted by or unconditionally delivered to the payee as duly executed instruments until all the directors had signed them in behalf of the corporation. Since the notes had not passed out of the hands of the original payee, and no rights of any holder in due course were concerned, it seems clear both by reason and by authority that the defense sought to be maintained by the above testimony was tenable. The negotiable instruments act provides: ·

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. . . ." (R. S. 52-216. See, also, *Grocer Co. v. Lackman,* 75 Kan. 34, 88 Pac. 527; *Bartholomew v. Fell,* 92 Kan. 64, 139 Pac. 1016; *Rice v. Rice,* 101 Kan. 20, 165 Pac. 799; *National Bank v. Stroup,* 104 Kan. 11, 177 Pac. 836; *Bank v. Trust Co.,* 107 Kan. 700, 193 Pac. 316, and citations; *Hamilton v. Young,* 116 Kan. 128, 225 Pac. 1045.)

In the instructive case of *Storey v. Storey,* 214 Fed. 973, a father sued his son on twenty-two promissory notes executed by the latter. The son answered that the notes were merely given to evidence the amount of advancements given to him by his father while the son was getting his education, and that father and son had agreed that the notes should only be used for that purpose. Following the rule that parol evidence is inadmissible to contradict the terms of written instruments, the trial court sustained a demurrer to the son's answer. The circuit court of appeals reversed the decision on the theory that while evidence is inadmissible to vary the terms of an agreement in writing, yet between the original parties the *animus contrahendi* is the predominant element. The court said:

"Delivery is an act. Whether the act has been accomplished cannot be told by reading the paper. Therefore, when a declaration on a written contract is met by a plea of no contract, the application of the rule against varying terms of a written contract by parol to the inquiry whether there is a contract, is a plain begging of the question, is a *tour de force* assumption of the very issue to be solved.

"Delivery is a composite act. There must be both a manual transfer, actual or constructive, and an operation of minds intending to enter into the contract. In the ages-old strife for predominance between objective or external and subjective or internal measurements of conduct, evolution has been away

from symbolism toward the inner truth. And in the law of commercial paper, between the original parties, the *animus contrahendi* has become the predominant element. This is shown by a provision of the uniform negotiable instruments act, which has been adopted in nearly all of the states. . . .

"Plaintiff by his demurrer admits that in truth the pretended notes are 'incomplete' because there was no 'delivery for the purpose of giving effect' to them as contracts of debt, and because the manual transfer was 'for a special purpose and not for the purpose of transferring the property in the instruments.'" (p. 975.)

In *Klemm v. Weil*, 194 Iowa, 1073, cited by appellee, the court conceded that if the defendant sureties who resisted payment of the promissory note in controversy had pleaded that the delivery of the note was upon condition that other sureties were to be obtained, and for the purpose of enabling the payee to obtain other sureties, evidence to support a defense of such conditional delivery would have been admissible. In the present case this important fact was sufficiently pleaded by appellants and the propriety of the answer was not questioned.

The court does not ignore the possible inconsistencies in the positions taken by defendants. These may be argued to the jury. Nor do we overlook the fact that if nobody except the corporation was to be bound to pay the debt evidenced by these three notes the official signatures of the whole board of directors were an apparent superfluity, since one officer of the corporation duly authorized to sign the notes would have bound the corporation just as effectively as the entire directorate and the entire roll of the stockholders as well. But that, too, is a mere matter for argument before a jury, and cannot weigh against the point that when the defense rested the cause was not in shape to be disposed of on a demurrer to the evidence.

It follows that the judgment of the district court must be reversed and the cause remanded for a new trial.

The judgment is reversed.