No. 39,587

In the Matter of the Estate of Mary Jane Johnson, Deceased. GEORGE JOHNSON, RUTH JOHNSON and BARBARA ANN GEORGE, *Appellants*, v. FRED JOHNSON, JR., ETHEL GLICK, DORATHE McCAULEY, ROBERT JOHNSON and ANNA MARSTON, *Appellees*.

(279 P. 2d 271)

Opinion filed January 22, 1955.

D. A. *Hindman*, of Stockton, argued the cause, and Stanley *Krysl*, of Stockton, was with him on the briefs for the appellants.

*Robert Osborn* and *W. McCaslin,* both of Stockton, argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This action, filed originally in the probate court, was, in its inception, a proceeding to probate a will. Through pleadings and contentions by protestants, it was expanded into a counter-action to probate a contractual lost or destroyed will, to set aside a deed, and for specific performance of an alleged oral contract to devise.

Proponents have appealed from an adverse judgment.

Protestants have filed a motion to dismiss the appeal.

Upon consideration of the record we have concluded that the appeal must be dismissed. For that reason only so much of the record as will show the basis of our decision will be summarized.

The following is not disputed:

On August 3, 1929, Fred Johnson, Sr., a resident of Rooks County, died intestate, leaving as his heirs-at-law his widow, Mary Jane, the decedent herein, and six adult children—George, Fred, Jr., Ethel, Dorathe, Robert and Anna. Among other property, he owned three quarter sections of real estate in Rooks County. On August 17, 1929, the six children, joined by their spouses, executed a quit-claim deed to their undivided interests in this real estate to their mother, Mary Jane. George was appointed administrator of his father's estate and the administration thereof was fully settled and closed a year later. The order of final settlement recited that the balance of money on hand for distribution be "paid to the widow by request of the children."

On May 25, 1949, the widow, Mary Jane, executed a will by the provisions of which three of her children, Fred, Jr., Anna and Ethel, were bequeathed the sum of five dollars each, and all of the residue of her estate was bequeathed and devised to the other three children, George, Robert and Dorathe, and a granddaughter, Barbara Ann, share and share alike. George was designated as executor of this will.

On April 24, 1953, Mary Jane, being still possessed of the three quarter sections of land owned by her husband, Fred, Sr., at the time of his death, executed a general warranty deed to one of the quarter sections to George and his wife, Ruth, in joint tenancy, the consideration thereof being the sum of one dollar and love and

affection. It also recited that it was a gift deed, that no revenue stamps were necessary, and reserved to Mary Jane certain rentals and royalties from oil and gas leases.

On June 18, 1953, Mary Jane died, and shortly thereafter George filed in the probate court a petition for the probate of the 1949 will.

In opposition to this petition, protestants, being the other five children of Mary Jane, filed a petition alleging that the deed of August 17, 1929, in which they and George quitclaimed their undivided interests in the three quarter sections of real estate to their mother, Mary Jane, was executed pursuant to an oral agreement with their mother, whereby, in consideration of such conveyance, she agreed to execute a will devising all of the property remaining in the estate of her late husband to her six children, share and share alike; that pursuant to such agreement their mother executed such a will on August 17, 1929, in which Fred, Jr., was designated as executor thereof; that said will was contractual in nature, but had been lost or destroyed; that the purported will executed by their mother in 1949 was in violation of and contrary to the terms of such oral contract and the contractual will executed in 1929; and that the 1953 deed from their mother to George and his wife, Ruth, to one of the three tracts of real estate, was given without consideration, was in violation of and contrary to the oral agreement entered into by all six children and their mother, and should be cancelled and set aside.

The prayer of this petition was for an order denying probate of the purported 1949 will; for an order admitting to probate the lost or destroyed will of 1929, and appointing Fred, Jr., as executor thereof; for a further order cancelling and setting aside the 1953 deed to George and his wife, Ruth, and, in the alternative, if the lost or destroyed 1929 will not be admitted to probate then that protestants have specific performance of the alleged oral contract, and that they and their brother George be decreed to be the owners as tenants in common of the three quarter sections of real estate.

By an appropriate motion George's wife, Ruth, was made a party to the proceeding, and George, Ruth and Barbara Ann, the granddaughter, filed a reply and answer to the petition of protestants.

This pleading admitted the death of Fred, Sr., in 1929; that Mary Jane and the six children were his only heirs-at-law; that he owned the three quarter sections of real estate in question; that

on August 17, 1929, the six children, together with their spouses, quitclaimed their undivided interests in the real estate to their mother, Mary Jane; that in 1953 the latter deeded one of the three tracts to George and his wife, Ruth, but denied all other material allegations of the petition filed by protestants.

Upon the issues thus joined, a hearing, at which considerable evidence was introduced, was had in the probate court.

At the conclusion thereof that court rendered judgment in favor of protestants to the effect that on August 17, 1929, Mary Jane entered into the claimed contract with her six children; that on such date she executed her will in conformity thereto; that such will was contractual and binding upon her; that it had been lost or destroyed; that Fred, Jr., was designated therein as executor; and that the 1953 deed from Mary Jane to George and his wife, Ruth, was void as being in contravention of the oral agreement and contractual will, and that the property attempted to be conveyed thereby should be inventoried as a part of Mary Jane's estate.

The judgment further ordered that probate of the 1949 will be denied, that the lost or destroyed will of 1929 be admitted to probate, and Fred, Jr., was appointed executor thereof.

Fred, Jr., qualified as executor and proceeded to administer the estate. The inventory and appraisement filed by him included the quarter section of land which had previously been conveyed by Mary Jane to George and his wife, Ruth.

George, Ruth and the granddaughter, Barbara Ann, appealed to the district court. The notice of appeal named and was served on Fred, Jr., in his personal capacity, and on Fred, Jr., executor of the purported will of Mary Jane.

In the district court no additional pleadings, other than a motion pertaining to jurisdiction, and which, for our purposes, need not be noted, were filed, and the case was tried upon the transcript of proceedings in the probate court.

In rendering its decision the district court made conclusions of fact and of law, which, in substance, affirmed the findings and judgment of the probate court, with the exception that Mary Jane's 1949 will was ordered admitted to probate. The journal entry of judgment provided that notwithstanding the admission of such will to probate, her estate was to be administered in accordance with the oral agreement entered into by her and the six children on August 17, 1929. In other words, the effect of the court's holding

was to deny probate of the lost or destroyed will of 1929 and to admit to probate the subsequent will of 1949, but to order enforcement of the 1929 will as a contract. (*In re Estate of Adkins*, 161 Kan. 239, 167 P. 2d 618.)

The court specifically refused to interfere with Fred, Jr.'s existing status as executor and left the matter to the discretion of the probate court, and the action was remanded for administration of Mary Jane's estate in conformity with the district court's judgment.

Certain post-trial motions, not here material, together with a motion for a new trial, filed by George, his wife, Ruth, and the granddaughter, Barbara Ann, being overruled, they have appealed to this court.

The notice of appeal named and was served on respondents (protestants) Ethel, Dorathe, Fred, Jr., Anna and Robert, and their attorneys of record.

As heretofore stated, counsel for protestants (appellees) have filed a motion to dismiss the appeal for the reason that one of the necessary parties to the action in the lower court, Fred, Jr., *executor*, was not named in the notice of appeal to this court, and that he, in his *representative* capacity, has an interest in the judgment of the lower court and in opposing the relief sought by proponents (appellants).

The question squarely presented, therefore, is whether the failure to serve the notice of appeal on Fred, Jr., as *executor*, is fatal. The answer is to be found in whether he, in his *representative* capacity, is a necessary party to the appeal under the applicable statute and our decisions. If he is, the appeal must be dismissed; otherwise not.

G. S. 1949, 60-3306, provides:

"Appeals to the supreme court shall be taken by notice filed with the clerk of the trial court, . . . A copy of such notice must be personally served on all adverse parties whose rights are sought to be affected by the appeal, and who appeared and took part in the trial, or their attorneys of record; . . ."

Questions involving the interpretation of this statute have been before the court on many occasions since the 1909 revision of the code. One of our earlier cases is that of *Peoples State Bank v. Hoisington Mercantile Ass'n*, 118 Kan. 61, 234 Pac. 71, in which it was said:

"An 'adverse party' under this code provision has been variously defined to be any party to the litigation, plaintiff, defendant or intervener, to whose

interest it is that the judgment of the trial court be upheld; any party to the litigation who is interested in opposing the relief which the appellant seeks by his appeal." (p. 67.)

In *In re Estate of Weaver,* 170 Kan. 321, 224 P. 2d 1004, the appeal was from an order appointing a named individual as the sole executor of the estate of a decedent. The notice of appeal was served on the attorney of record for the *individual* so named, but the record revealed no service of the notice on him in his *fiduciary* capacity. In holding that where necessary parties are not joined on appeal this court acquires no jurisdiction of the cause, and that such appeal will be dismissed, this court said:

"In construing the provisions of 60-3306, *supra,* heretofore quoted, this court has repeatedly held that an adverse party in a civil action on whom notice of appeal to the supreme court must be served, under its terms, is a party to the litigation, to whose interest it is that the judgment of the trial court must be upheld, and who is interested in opposing the relief sought by the appellant." (Citing cases.) (p. 324.)

See also *Shell Oil Co. v. Board of County Comm'rs,* 171 Kan. 159, 162, 163, 231 P. 2d 220, and *In re Estate of Bergner,* 173 Kan. 582, 250 P. 2d 781.

Proponents (appellants) recognize the force and effect of the rule, but contend that it has no application to the case at hand for two reasons—first, that Fred, Jr., as *executor,* did not join issues with anyone and made no appearance at the trial in the district court, and, second, that when probate of the 1929 will was denied and the later (1949) will was admitted to probate by the district court Fred Jr.'s powers as executor under appointment by the probate court ceased, and that his sole remaining duty then was to settle his accounts. In support of their contention they rely upon our very recent holding in *State, ex rel., v. Doe,* 176 Kan. 89, 268 P. 2d 960, in which it was held that failure to serve notice of appeal on a receiver for a finance company did not render the notice of appeal fatally defective.

We are unable to concur in these contentions.

The Doe case is readily distinguishable. There the receiver was not a party to the litigation in any sense. He did not represent any of the parties and filed no pleading in his own behalf. He was merely an arm of the court entrusted with the possession and management of the property involved. Not being a party to the litigation and having filed no pleadings on which issues were

joined involving his interest, he was not an adverse party within the meaning of the statute, *supra.*

It is quite true that Fred, Jr., as executor, filed no pleadings in the district court. In fact, no additional pleadings were filed in that court by any of the protestants (appellees), but it cannot be said that Fred, Jr., who had been appointed executor by the probate court, was not, in such representative capacity, a party to the litigation in the district court. His appointment as executor was one of the orders made by the probate court from which proponents (appellants) appealed to the district court. He had qualified as such executor and had proceeded to administer the estate. As heretofore stated, in rendering its decision the district court specifically refused to interfere with his status as executor. Under the existing facts and circumstances it cannot be said that Fred, Jr., in his capacity as *executor,* is not interested in opposing the relief sought by proponents (appellants) and is not interested in seeing to it that the judgment of the district court be upheld.

In the Bergner case, *supra,* it was held:

"Where necessary parties have not been joined on appeal the appellate court acquires no jurisdiction of the cause and the appeal will be dismissed." (Syl. ¶ 2.)

Upon the record before us we have no alternative than to dismiss the appeal, and it is so ordered.

ROBB, J., not participating.