WILLIAM MATNEY v. JAMES LOGAN LINN AND SALLY
ANN MATNEY.

No. 10586.

1. CONSENSUAL MARRIAGE—*valid in Kansas.* Under the laws of
   Kansas, there may be a valid consensual marriage between per-
   sons, capable of assuming the marriage relation, who, in pur-
   suance of an agreement, live together, in good faith, as husband
   and wife.

2. ANTENUPTIAL CONTRACT—*favorably viewed and liberally in-
   terpreted.* The courts look with favor upon antenuptial agree-
   ments in marriage settlements, and generally hold that they are
   to be liberally interpreted, so as to carry out the purposes of those
   engaging in them.

3. ———— *particular, held reasonable and just.* The marriage
   settlement in question examined; and it is held that, considering
   the circumstances of the parties and of the case, its provisions are
   reasonable and just, and should be enforced.

4. HUSBAND'S HOMESTEAD INTEREST—*where legal title in wife,
   not an estate.* Where the complete legal title to the homestead
   is in the wife, the contingent interest of the husband does not rise
   to the rank of an estate; his interest is a right of occupancy, with
   a restriction on the wife's power to alienate the same without
   consent.

5. HOMESTEAD—*consent to alienation by the one not vested with
   the legal title, need not be in writing.* While there must be
   a joint consent of the husband and wife to the alienation of the
   homestead, the written consent of the one not vested with the
   legal title is not absolutely essential.

6. ———— *evidence held sufficient to show joint consent to alien-
   ation of part.* The testimony examined, and it is held sufficient
   to show that there was a valid joint consent of the husband and
   wife to the alienation of that portion of the homestead upon
   which the dwelling house and other buildings stood.

7. ———— *when part occupied as, sold, remainder loses home-
   stead character.* By the sale and severance of the part occupied
   as a homestead, the part not so occupied was no longer impressed
   with the homestead character; and it therefore became subject
   to and was controlled by the provisions of the marriage settle-
   ment.

Error from Shawnee District Court.   Z. T. Hazen,
Judge.   Opinion filed October 8, 1898.   *Reversed.*

*Waters & Waters*, for plaintiff in error.

*S. B. Isenhart* and *C. A. Starbird*, for defendants in error.

JOHNSTON, J.   This was an action by William Matney against James Logan Linn and Sally Ann Matney, the children and heirs of Harriet E. Matney, who is now deceased, and who had been the wife of the plaintiff, William Matney, for the partition of a quarter-section of land, in Shawnee County, in which William Matney claimed to own an undivided share of nine-twentieths.   It appears that William Matney and Harriet Linn were married in 1865; and that at the time of their marriage, the land in controversy was occupied by Harriet E. Matney and her children, and had been obtained through her former husband, James Linn.   She and her second husband, as man and wife, occupied the premises as a homestead, until 1879.   In that year a decree of divorce was granted Harriet E. Matney, by the District Court of Shawnee County, which severed the marriage relation between the parties and divided the property between them. She was awarded her separate property, including the real estate in controversy, and William Matney, by the decree, was barred from asserting any right or interest in the land awarded her.

After the decree of divorce they lived apart until April, 1881.   At that time, in contemplation of another marriage, they entered into an agreement to the effect that their property interests should be so adjusted as to exclude each from any interest in the property of the other, after the consummation of the marriage.   It was recited that William Matney, in contemplation of this marriage, had disposed of his property so as to place it beyond the power of Har-

riet E. Matney to acquire any interest therein after the consummation of their marriage, should she outlive him. It was further recited that Harriet E. Matney contemplated and intended to bequeath all of her property to her son, James Logan Linn; and, in case she failed to make such will before her death, it was agreed between the parties that the contract should stand for and operate as a will of the said Harriet, and that all of her property of which she might die seized should pass as an inheritance to James Logan Linn and his heirs. It was stipulated that immediately after the marriage Harriet E. Matney might make a will or conveyance, as she might elect, bequeathing or conveying all of her property to James Logan Linn or such other persons as she might choose, and that William Matney would freely and voluntarily consent to any will or conveyance that she might make, and that such consent should effectually exclude him from any right or interest in such property by virtue of the marriage, or otherwise; and that if he at any time should refuse to relinquish or consent to such will or conveyance the refusal should make valid this agreement as and for a will, and such refusal should be held to be a fraud on the rights of Harriet, and the marriage contract should be held to have been fraudulently made and obtained by William Matney, because of the fact that the full and fair execution of the agreement by Matney, was the sole consideration moving to Harriet from him for making the marriage contract and entering into the marriage relation. Instead of a formal marriage ceremony and contract, the parties both appeared in court and asked the court to vacate the decree of divorce, and an order was made attempting to modify and vacate so much of the decree as severed the marriage relation; but it specifically provided that it

should not modify the decree in any other respect, or interfere with, or change or modify, any rights or interests acquired under, or resulting from, the decree of divorce. After the order modifying the decree was made the parties lived together as man and wife, and occupied the premises in controvery as their homestead. Shortly afterwards, and in August, 1893, Harriet E. Matney executed a will bequeathing her property to her son James Logan Linn, and also executed a deed conveying to him the south half of the premises in question. In June, 1893, she made a warranty deed purporting to convey the north half of the quarter-section in controversy to Sarah Ann Matney, her daughter. Her husband did not join in the deed, but it is alleged that he gave his joint consent to the alienation, and he did sign the deed as a witness.

The court below, upon the testimony, found that the deed from Harriet E. Matney to Sarah Ann Matney was executed and delivered with the joint consent of William Matney and Harriet E. Matney, but that the consent was not in writing; and, further, that the deed from Harriet E. Matney to James Logan Linn was delivered to Linn without the joint consent of William Matney, her husband, who expressly refused to consent to the alienation attempted. It was further found that William Matney did not consent to the execution of the last will and testament of Harriet E. Matney, but had refused to take under the provisions of the same and elected to take under the Statute of Descents and Distributions. The court therefore confirmed the deed to Sarah Ann Matney, and held that she was the owner in fee simple of an undivided seven-eighths of the north half of the land in controversy; that the land attempted to be conveyed by the deed to James Logan Linn was a part of the homestead of the

grantor, and, there being no joint consent, the deed was ineffectual; that the will of Harriet E. Matney, deceased, having been made without the consent of William Matney, did not pass title to the property, but did convey an undivided half interest in the property attempted to be conveyed; and that William Matney was the owner in fee simple of an undivided seven-sixteenths of the south half of the quarter-section in controversy, and that James Logan Linn had inherited from his father, and is the owner in fee simple of, an undivided one-eighth of the land in controversy. William Matney complains of the judgment, and so does James Logan Linn; and each has filed a petition in error. William Matney having died since the commencement of the proceeding in error, it has been revived in the name of the administrator of his estate.

In behalf of the plaintiff it is argued that the antenuptial contract between William and Harriet Matney was invalid; that the land in controversy was their homestead, and no part of it could be conveyed without the joint consent of both; that such consent was not given, and that, therefore, the deeds to Sally Ann Matney and James Logan Linn were invalid, and that the court erred in awarding the north half of the land to Sally Ann Matney. At the time of the conveyances mentioned, the legal title of the land was in Harriet Matney, except that James Logan Linn owned a one-eighth interest which he inherited from his father. It was occupied as a homestead by William and Harriet Matney before, and after, the divorce of 1879.

That decree effectually severed the marriage relation and excluded each from any interest in the property adjudged to the other. It may be said that nothing was accomplished by the attempt to modify the decree in 1881. It had stood as a finality for nearly two years, and the effort to modify

1. Consensual marriage valid.

it, by vacating the part divorcing the parties, and to leave the other features of the decree undisturbed, upon a mere motion, long after the term at which it was rendered, was ineffectual. That act did not re-unite the parties, nor restore the homestead rights that William Matney formerly held in his wife's land. The fact that this step was ineffectual, and the further one that there was no formal marriage at that time, does not argue that they did not again enter the marriage relation. It appears that there was at that time a mutual present assent of the parties to immediate marriage. They were capable of assuming that relation, and in pursuance of that consent and agreement, they lived together as husband and wife, in good faith, until they were separated by death. These things were sufficient to constitute a valid consensual marriage. *The State v. Hughes*, 35 Kan. 626, 12 Pac. 28 ; *The State v. Walker*, 36 id. 297, 13 Pac. 279 ; *The State v. McFarland*, 38 id. 664, 17 Pac. 654.

Assuming, then, that they were husband and wife from the time they began living together as such in 1881, it must be held that William Matney acquired a homestead interest in the quarter-section

4. Husband's home-
stead interest
not estate, whe·.

which they occupied. While he had an interest in the land, it did not rise to the rank of an estate. It was only a right of occupancy with a restriction upon the wife's power to alienate the property without his consent. As she still held the complete legal title, the whole estate was vested in her, and at her death it descended to her heirs, or those to whom it may have been devised. *City of Leavenworth v. Stille*, 13 Kan. 548 ; *Jenness v. Cutler*, 12 id. 516.

The homestead interest which he acquired was probably not affected by the antenuptial agreement of the parties. But first, with reference to its validity : It was made in contemplation of an immediate mar-

riage, and the reciprocal conditions, and the marriage itself, are a sufficient consideration for the agreement. Marriage settlements of this character are looked upon with favor by the courts, and it is generally held that they are to be liberally interpreted so as to carry out the purposes of the parties engaging in them. There can be no question of the validity of such settlement where it is entered into in good faith by parties competent to contract, and which, considering the circumstances of the parties at the time of making the same, is reasonable and just in its provisions. A settlement so made will be enforced by the courts, and the disposition of the property so made will take the place of that prescribed by the statute as to the distribution of property upon the death of either. *Hafer v. Hafer*, 33 Kan. 449, 6 Pac. 537.

*2. Antenuptial contract favorably construed.*

The provisions of the contract in question appear to be reasonable and just. The property of the parties had been equitably divided when the divorce was granted, and to prevent contention or injustice, it was mutually agreed that the provision should be absolute, and that the reunion should not in any way effect that settlement. In contemplation of the marriage, William Matney had already disposed of all his property so that neither Harriet nor her children could share in it in case she survived him. And the purpose of the marriage settlement was that he, or his children, should not share in her individual property if he should survive her. We find nothing inequitable in its provisions, and we see no reason why it should not be enforced. By this contract he consented and agreed that Harriet might convey her property to her children, or other person, as she might choose, and that the agreement should operate as a consent on his part. It has been held, however, that such a contract is inoperative as to the

*3. Contract held just.*

homestead interest. The deed, however, to Sally Ann Matney, which was executed in June, 1893, appears to have been made with his express consent. It is true, he did not join in its execution, although he did sign it as a witness. There is abundant testimony, however, to show that he consented to the alienation of the land, and that it was a present assent at the execution of the instrument. It is held that while there must be a joint consent of the husband and wife to an alienation of the homestead, it need not necessarily be expressed in writing to fulfil the constitutional requirement. *Pilcher v. Railroad Company*, 38 Kan. 516, 16 Pac. 945 ; *Dudley v. Shaw*, 44 Kan. 683, 24 Pac. 1114.

We think the court correctly held that the deed to Sally Ann Matney was a valid and effectual conveyance, and that William Matney, by consenting thereto, transferred and surrendered the homestead interest which he held in the land conveyed. We cannot sustain the ruling of the court, however, as to the disposition of the south eighty, which Harriet Matney undertook to convey and bequeath to her son, James Logan Linn. It is true, that the court found that William Matney did not consent to the conveyance, nor the devise made of that land to James Logan Linn. He had, however, consented to the conveyance of the north half of the land whereon were the family dwelling, barns, and other buildings, as well as the orchard. By his consent and surrender of the homestead interest in the north eighty, upon which was the family dwelling, and other improvements, he also surrendered the homestead interest in the south half. The land must be occupied as a homestead to impart to it the homestead character. As was remarked by Chief Justice Doster :

"The dwelling house upon the homestead is an inseparable part of it. There can be no homestead

*Margin note: 5. Consent to sell homestead need not be in writing, when.*

without a place of family dwelling, either actual, or in such contemplation as amounts to the same thing. The dwelling house is the nucleus of all the homestead interests and affections, and hence whatever homestead selection is made must include the family roof-tree." *Peak v. Bank*, 58 Kan. 489, 49 Pac. 614.

Having surrendered the homestead interest, the provisions of the marriage settlement are controlling, and under the terms of the will and the conveyance made by Harriet Matney, the entire south eighty of the land in controversy becomes the property of James Logan Linn. Neither William Matney, nor his heirs, are entitled to any share in the property in controversy. So much of the judgment as affected the north eighty of the land in controversy, will be affirmed, while that part of the judgment relating to the south eighty, will be reversed, with directions to enter judgment awarding the entire eighty-acre tract to James Logan Linn.