JACOB RENFROW *et al.* v. ANN RENFROW.

**No. 11100.**

1. COMMON-LAW MARRIAGE—*Not Annulled by Failure to Comply with the Statute.* The matrimonial status of a man and woman living together as husband and wife under an agreement of consensual or common-law marriage is not annulled by the failure of such persons to comply with the terms of a statute declaring it to be their duty to appear before an officer and formally solemnize their marriage, and providing penalties for their neglect to do so, but which contains no provisions nullifying their relations to each other because of their violation of its requirements.

2. ——— *Contract Implied from Acts and Conduct.* To constitute a marriage good at common law, an express agreement between the parties to take and live with each other as husband and wife is not necessary. The agreement to do so is implied from their acts and conduct in mutually recognizing and holding each other out as bound together in the matrimonial state, and proof of such acts and conduct is proof of the marriage agreement.

Error from Douglas district court; JOHN T. BURRIS, judge *pro tem.* Opinion filed March 11, 1899. Affirmed.

*W. W. Nevison,* for plaintiffs in error.

*A. C. Harding,* and *A. F. Martin,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: Grant and Ann Renfrow were colored persons living in the state of Missouri. They married each other in 1852 according to the ordinary form of marriage agreement and ceremony. This marriage did not confer upon them any legalized matrimonial status or relation. It was not deemed illegal or immoral by the law then obtaining, but it did not constitute them husband and wife. "It was an inflexible rule of the law of African slavery wherever

it existed that the slave was incapable of entering into
any contract, not excepting the contract of marriage."
(*Hall v. United States, etc.*, 92 U. S. 27.)   "Marriage
is based upon contract; consequently the relation
of man and wife cannot exist among slaves.   It is ex-
cluded, both on account of their incapacity to contract,
and of the paramount right of ownership in them as
property." (*Howard v. Howard*, 6 Jones [N. C.] 235.)
To the same effect is *Johnson v. Johnson*, 45 Mo. 595.
As presently more particularly stated, the persons
named lived together as husband and wife until 1868.
Missouri was not within the insurrectionary portions
of slaveholding territory over which the emancipation
proclamations of September 22, 1862, and January 1,
1863, operated.   Slavery continued to exist there un-
til abolished, January 11, 1865, by ordinance of the
constitutional convention of that state.   (Gen. Stat.
of Missouri, 1889, p. 63.)   After the passage of this
ordinance, and on February 20, 1865, the legislature
of Missouri enacted the following statute : .

"That in all cases where persons of color heretofore
held as slaves in the state of Missouri have cohabited
together as husband and wife, it shall be the duty of
persons thus cohabiting to appear before a justice of
the peace of the township where they reside, or before
any other officer authorized to perform the ceremony
of marriage, and it shall be the duty of such officer to
join in marriage the persons thus applying, and to
keep a record of the same.

"Free persons of color living or cohabiting together
as husband and wife without being married according
to the provisions of this act shall, after twelve months
from its passage, be liable to criminal prosecution,
and subject to same penalties as now provided by
law : *Provided, however*, that this section shall not ex-
tend to colored persons who have enlisted in the serv-
ice of the United States or state of Missouri, who shall
not be subjected to any penalty for its violation until

six months after their discharge from said service." (Missouri Session Laws, 1865, p. 68.)

The Renfrows never complied with the provisions of this law. In disregard of it they continued to live together until 1868, in which year Grant abandoned Ann, declaring his intention no longer to recognize her as his wife. Thenceforth he never did recognize her as such, but several times thereafter married other women, by some of whom he had children. Throughout the time intervening between his emancipation from slavery and his separation from Ann they lived together in Missouri as husband and wife, mutually recognizing and holding each other out in the face of the world as such. Grant Renfrow moved to Kansas, accumulated here a small amount of property, and died. This action was instituted by his first wife, Ann, in assertion of her rights as his widow to a division of the property left by him. To this action his children and his last wife, Medora, were made defendants. Upon the facts above summarized judgment was rendered against them, and they prosecute error to this court.

It is admitted by counsel for plaintiffs in error that consensual or common-law marriages are and at the dates above mentioned were recognized as valid in the state of Missouri. It is, however, insisted that the above-quoted Missouri statute disqualified persons of color from contracting marriage according to the common law. It is insisted that the penal provisions of this statute excluded such class of persons from the operation of the common law of consensual marriage, and rendered ineffectual and void all agreements of marriage by such persons which were not solemnized according to its provisions. The plaintiffs in error are mistaken. The statute in question does not pretend to operate upon the marriage status. It

does not pretend to annul or forbid the marriage re-
lation because not entered into in accordance with
prescribed forms.    It only provides penalties for non-
compliance with certain ceremonies of solemnization.
It is in effect like the statute of this state discussed
in *The State v. Walker*, 36 Kan. 297, 32 Pac. 279, in
which it was held that "punishment may be inflicted
upon those who enter the marriage relation in disre-
gard of the prescribed statutory requirements without
rendering the marriage itself void." The general
doctrine is that a marriage good at common law is
good notwithstanding the neglect of statutory forms
relating to the subject, unless the statute itself con-
tains express words of nullity because of the failure to
conform to its requirements. ( 1 Bishop, Marr. and
Div. [5th ed.], § 283 ; *Meister v. Moore*, 96 U. S. 76.)
The statute, it will be observed, makes it the "duty"
of colored persons to solemnize their marriage agree-
ment before an officer, but it does not abrogate the
marital relation as a penalty for the violation of its
provisions.

It is also insisted that the facts stated do not show
the existence of a consensual or common-law marriage
between Grant and Ann Renfrow, because no express
agreement between them to take and live with each
other as husband and wife was shown to have been
made at any time between their emancipation from
slavery and their separation three years later, with-
out which agreement, it is contended that such kind
of marriage cannot exist, or, to state the contention
of the plaintiffs in error more accurately, cannot be
proved.    It is true the making of such agreement was
not shown, but it does not follow that legal proof of
the marriage was lacking.    If a marriage contract
need not be evidenced by writing, and of course it

need not be, we can conceive of no reason why it may not, like many other civil contracts, be evidenced by acts and conduct from which its making *ore tenus* may be presumed.  The acts and conduct of Grant and Ann Renfrow, after the removal of their disabilities, were in recognition of each other as husband and wife, and were continued for a sufficient length of time and with such openness to the world as to estop either from claiming to the contrary and to establish for themselves the marital status in the community where they resided.  In the case of *Francis v. Francis*, 31 Gratt. 283, the same contention was made before the court of appeals of Virginia, in the case of a colored man and colored woman, as the plaintiffs in error make before us in this case.  In the opinion of the court in that case it was said :

"It must appear that they have agreed to occupy that relation.  The fact that they have so agreed is, however, not always susceptible to direct proof.  The courts must, in many cases, infer it from the circumstances.  It is not necessary that the parties shall have expressly agreed to live together as husband and wife.  The agreement or understanding may be implied, as in other cases, from their conduct and declarations.  In the present case there is no positive proof of an express agreement of the appellant and the appellee to occupy the relation to each other of husband and wife.  But the circumstances tending to show an implied understanding of that sort are almost as satisfactory as the direct testimony of unimpeached witnesses to the fact."

The facts involved in *Solomon McReynolds v. The State*, 5 Coldw. 18, were identical with those now under consideration, and in that case the court held that after the living together of a slave man and woman as husband and wife, a mutual recognition by them of each other in that relation, after the removal of

their disabilities by emancipation, constituted a consensual marriage.

The plaintiffs in error urge some matters of conduct upon the part of Ann Renfrow toward her husband Grant as equitable reasons for refusing her recognition as his widow, and for disallowing her a share of his estate. They are not, however, sufficient to prevent the operation in her favor of the rules of law we have announced, and the judgment of the court below will be affirmed.