Schuchart v. Schuchart.

---

THOMAS SCHUCHART v. AGNES SCHUCHART.

No. 11,518. (60 Pac. 311.)

MARRIAGE AND DIVORCE—*Common-law Marriage.* A man and woman were formally married when one of them was under disability because a decree of divorce previously granted had not become effective. Both intended in good faith to assume the marital relation, and after the disability was removed they decided and did continue to live together as husband and wife without the performance of another marriage ceremony. *Held,* that the facts stated were sufficient to establish a common-law marriage and to make them husband and wife after the disability was removed.

Error from Washington district court; F. W. STURGES, judge. Opinion filed March 10, 1900. Affirmed.

*E. A. Berry,* and *Gregg & Gregg,* for plaintiff in error.

*W. W. Redmond,* and *Chas. Smith,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : The controversy in this case arises over the title to a quarter-section of land in Washington county claimed by Thomas Schuchart, as the son and only heir of Jacob Schuchart, who died in December, 1896, while the defendant claims the property on the ground that she was the lawful wife, and is now the widow, of Jacob Schuchart, deceased.   The decision of the case turns on the point whether Agnes was the wife of Jacob at the death of the latter, and this question was determined in the affirmative by the jury in the trial court.   There is no dispute but that Jacob was married early in life to the mother of the plaintiff, but it appears that she died in 1891, leaving him free to contract the marriage relation with another. He undertook to enter into the marriage relation with Agnes, who it appears had been formerly married to one Porteous.   There had been a separation between them, and she had not heard from or of Porteous for about seventeen years prior to the time she assumed the marriage relation with Schuchart.   Lest he might be still alive, she procured a divorce from Porteous on September 10, 1894, in Riley county, where she then resided.   Within three months thereafter, and before the decree of divorce became operative and final, she and Jacob Schuchart procured a license to marry and a marriage ceremony in due form was performed by the probate judge of Washington county.   The parties overlooked, or were unmindful of, the statute providing that the marriage relation is not effectually

dissolved until the expiration of six months from the date of the decree of divorce. The attempted marriage was therefore a nullity. But the contention of the defendant is that, having learned of the limitation of the statute and of the invalidity of the marriage ceremony, they then determined to live together as husband and wife without further ceremony, and thereafter and in good faith did live for years in that relation.

Was there a consensual or common-law marriage? The jury found that there was, and the proof abundantly sustained the finding. It showed that the marital relation was honestly but illegally assumed in the first instance. Agnes was then under a disability, it is true, but, so far as the record shows, both of them were innocent of an intent to transgress the law or to commit a wrong. When they learned of the disability and that it had been removed, the matter of another ceremony was considered and discussed between them. He expressed a willingness to have a repetition of the ceremony if she desired that it should be done, but stated that he saw no necessity for it. She did not think it was necessary, and both then declared that "we are man and wife, and will continue to be man and wife"; and it appears that thereafter they cohabited and otherwise lived together as such. They publicly acknowledged each other as husband and wife, assumed marriage rights, duties, and obligations, and were generally reputed to be husband and wife in the community. The plaintiff even visited with and treated them as occupying the marriage relation, and so regarded them, until he heard of the statutory disability which existed when the marriage ceremony was performed.

The plaintiff contends that, as the relation between

the parties in the first instance was illicit, the presumption is that the illicit relationship continued after the statutory disability had been removed. If they had entered into a mere meretricious relation, with an arrangement that the illicit cohabitation should be abandoned at the will of either, there would be room for a presumption that the illicit relationship continued after the removal of the disability. It is the policy of the law, however, to uphold marriage contracts, and to sustain marriage, where the parties in good faith intend to assume the marriage relation and thereafter live together as husband and wife. To establish the plaintiff's claim, he necessarily asserts the wrong of his father; that the connection was not formed with pure motives, nor entered into with the intention of creating the relation of husband and wife — was merely formed for carnal commerce. As has been said, the law presumes morality and not immorality, marriage and not concubinage, legitimacy and not bastardy. (*Hynes et al. v. McDermott et al.*, 91 N. Y. 451.) Bishop, in treating of marriages formally entered into in good faith, where there was an impediment to the marriage, says:

"If the parties desire marriage, and do what they can to render their union matrimonial, yet one of them is under a disability — as, where there is a prior marriage undissolved — their cohabitation, thus matrimonially meant, will in matter of law make them husband and wife from the moment when the disability is removed." (1 Bish. Mar. & Div. §§ 970, 975, 979; *Teter v. Teter*, 101 Ind. 129; *Poole v. The People*, 24 Colo. 510, 52 Pac. 1025.)

The marriage in this case, as we have seen, was formally celebrated, and as every presumption of the law is in favor of matrimony, the burden is on the plaintiff to show illegality, even though it may in-

volve the proving of a negative. To establish his case, the plaintiff was therefore required to prove not only that Porteous was living, but that the marriage relation of the defendant with him had not been dissolved by divorce. He did show that Porteous was still living, but failed to show that a divorce had not been granted to Porteous from her. (*Boulden et al. v. McIntire*, 119 Ind. 574, 21 N. E. 445; *Klein v. Laudman*, 29 Mo. 259; *Hadley v. Rash*, 21 Mont. 170, 53 Pac. 312.) We need not rely on this presumption, however, and prefer to place our decision on the ground that there was a consensual marriage. Everything in the evidence indicated purity of purpose and good faith in forming the relation, and after the impediment was removed it is manifest that there was present in the minds of the parties that mutual consent which gives validity to marriages in cases where there is no formal solemnization.

Some criticism is made upon the language employed by them to express their consent, but the surrounding circumstances and subsequent conduct of the parties leave no doubt as to the interpretation which should be placed upon their words. As held in *Renfrow v. Renfrow*, 60 Kan. 277, 56 Pac. 534, an express agreement between the parties to take and live with each other as husband and wife is not neccessary. The agreement to do so may be implied from their acts and conduct in mutually recognizing and holding each other out as bound together in the matrimonial state. The words, however, that were used, and of which testimony was given, fairly indicated a present intention to marry and to accept each other as husband and wife. This, in connection with their subsequent conduct, was clearly sufficient to establish marriage.

The objections to rulings upon testimony are unsubstantial, and what has been said is sufficient answer to the exceptions taken to the rulings upon instructions. The judgment will be affirmed.