No. 29,195.

Louisa Steinborn Butler, *Appellant*, v. Charles R. Butler, *Appellant;* George Lenhart, *Appellee.*

(285 Pac. 627.)

Opinion filed March 8, 1930.

*Ira C. Snyder,* of Manhattan, for appellant Louisa Steinborn Butler; *C. Vincent Jones,* of Clay Center, for appellant Charles R. Butler.

*George L. Davis, W. M. Beall* and *Oscar E. Peterson,* all of Clay Center, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This action involved the validity of the title to a Clay county farm which the defendant, George Lenhart, purchased at a foreclosure sale pursuant to a judgment against Charles R. Butler, former holder of the fee, who had mortgaged it as a single man.

The plaintiff, Louisa Steinborn, claimed to be the common-law wife of Butler and that the farm was the homestead of herself and him. She prayed to have her title quieted and that defendant's deed be canceled and held for naught.

The defendant, George Lenhart, joined issue as to the alleged common-law marriage, set up his title to the farm based upon its purchase for $10,400 in cash at the sheriff's sale in foreclosure, and pleaded estoppel against plaintiff on the ground that during the fifteen years she had lived on the farm immediately prior to the foreclosure sale she had uniformly held herself out to the community as a single woman, and that her alleged common-law husband had

similarly held himself out to be a single man, and that she knowingly remained silent during the time the property was being sold in foreclosure and purchased by defendant.

Butler, a nominal defendant, answered admitting all the allegations of plaintiff's petition.

Plaintiff replied to Lenhart's answer with an allegation that whatever instruments Butler executed purporting to affect the title to the farm were without her joint consent and therefore void, "and that the conduct of said defendant [not specified] had been such as to not enable him to claim an estoppel."

A jury was waived and the cause tried by the court.

The evidence for plaintiff tended to show that about 1910 Louisa Steinborn and Charles R. Butler resided on neighboring tracts of government land in Oklahoma, seeking to perfect their titles thereto in accordance with the United States land laws. While residing on their respective claims, they agreed to marry as soon as they should prove up on their lands; and sometime in November, 1910, they met at the homestead cabin of Louisa, no one else being present, and agreed to become husband and wife, which agreement was then consummated by cohabitation, and that they lived together thereafter in Oklahoma for six months, after which they returned to Clay county, Kansas, to the farm in controversy, which Butler had inherited from his parents. Plaintiff's evidence also tended to show that she and Butler continually resided on the farm after their arrival from Oklahoma until the institution of this action.

On behalf of defendant, the testimony and evidential circumstances tended to discredit the plaintiff's evidence touching the existence of the alleged common-law marriage. Even the cross-examination of the plaintiff herself weighed strongly against her. She never took her pretended husband's name, her excuse being that she did not know a common-law wife had that privilege. She held title to real property which she repeatedly mortgaged as a single woman, her excuse being that she signed the mortgage instruments without reading them. She had an illegitimate son who died in the army during the world war, and she applied to the government for insurance as a single woman and dependent upon that son for support. Time and again she had stated to various witnesses that she was not Mrs. Butler nor Mrs. Steinborn, but *Miss* Steinborn, and that she was never married.

Typical excerpts from her testimony on cross-examination read:

"Q. And at no time that these mortgages were taken or given, did you tell any of them that you were married? A. No. . . .

"Q. You signed it as a single woman? A. Yes.

"Q. You were married at that time as you now claim? A. Yes.

"Q. Why didn't you sign it as Louisa Steinborn Butler? A. I didn't think it was necessary. . . .

"Q. And your only reason for so doing is that you didn't know you were entitled to use the name of Butler? A. That was one of them.

"Q. What was the other reason? A. I had an heir and I wanted to keep my property for my heir. . . .

"Q. You did send this postal card to Miss Marven? It is dated June, 1925. A. I suppose I did."

This exhibit 1 was a picture post card addressed to Miss Marven and signed "Miss Louisa Steinborn."

"Q. But you have been cohabiting there as man and wife? A. Yes. . . .

"Q. You say some of the neighbors turned their noses up at you? A. Yes.

"Q. What was the reason of that; was it because they thought you were living there with Mr. Butler unmarried? A. I have an idea it was.

"Q. And you never took the trouble to inform them differently? A. It was none of their business.

. . . . . . . . . . . . .

"Q. As a matter of fact you never held yourselves out to anybody as being married, did you? A. We held ourselves out to each other as being married, but not to the world."

The trial court made extended findings of fact, some of which read:

"No. 11. I further find from the evidence that the plaintiff, Louisa Steinborn, and the defendant, Charles R. Butler, never at any time held themselves out to the public as being married persons. That the said Louisa Steinborn never at any time introduced the said Charles R. Butler as her husband to any person; and that the said Charles R. Butler never at any time introduced the said Louisa Steinborn as his wife to any persons whomsoever; but on the contrary each and both of said parties made denial of the fact that they were married to each other. That the general reputation of the plaintiff and the defendant, Charles R. Butler, in the community in which they resided was that they were single and unmarried and that she, while living upon the real estate in controversy, was acting in the capacity of housekeeper for the said Charles R. Butler. That the first public declaration that the said plaintiff and the defendant, Charles R. Butler, were married to each other was made when the plaintiff filed her petition in this action. That there was never any consensual marriage entered into by and between the plaintiff and the defendant Charles R. Butler."

From this and the other findings of fact the trial court made certain conclusions of law:

"That the said plaintiff, Louisa Steinborn, and the defendant Charles R. Butler, having never legally married, had no homestead right in the land in controversy in this action and now have no homestead right therein.

"No. 2. That the said defendant, George Lenhart, is the owner of the fee-simple title in and to the real estate in controversy in this action, . . . and is entitled to immediate possession of the same and to a writ of assistance to place him in possession thereof.

"No. 3. That the title of George Lenhart to the real estate above described be quieted in him as against the plaintiff, Louisa Steinborn, and the defendant, Charles R. Butler.

"No. 4. That the defendant, George Lenhart, do have and recover, of and from the plaintiff herein, his costs."

Judgment was entered accordingly. Plaintiff and Butler appeal. Their counsel direct our attention to what they characterize as three major questions of mixed law and fact:

"1. Was there a marriage as between the appellants?

"2. If there was, was the land in controversy occupied by them as their homestead?

"3. If there was a valid marriage and a homestead as between the appellants, are appellants estopped to claim the homestead?"

As we view this appeal, however, unless there was a marriage between Louisa Steinborn and Charles R. Butler the second and third questions will give us no concern. It is adroitly suggested that the first proposition is a mixed question of law and fact. If it were, of course, this court would be privileged to reach an independent conclusion from that of the trial court. But it cannot be admitted that the question whether there was a common-law marriage in this case was complicated with matters of law. The trial court merely declined to give credence to the testimony of Steinborn and Butler touching their alleged contract and its consummation in Oklahoma, and on all the evidence held squarely that "there was never any consensual marriage entered into by and between the plaintiff and the defendant Charles R. Butler." Doubtless the court was strongly persuaded thereto from many other probative facts in evidence which tended to discredit plaintiff's evidence—the long-continued secrecy of the pretended marriage, the oft-repeated denials of it, the repeated avowals of plaintiff that she was a single woman, the want of apparent *bona fides* and manifest disregard of conventional proprieties which caused the neighbors to turn up their noses at plaintiff, and the other circumstances and admissions of plaintiff— all these made too strong a support for the judgment of the trial court to permit it to be disturbed.

Our own decisions take it for granted that some measure of publicity is a distinguishing feature if not an essential attribute of a common-law marriage. (*State v. Hughes,* 35 Kan. 626, 12 Pac. 28; *Renfrow v. Renfrow,* 60 Kan. 277, 56 Pac. 534.) In *Schuchart v. Schuchart,* 61 Kan. 597, 60 Pac. 311, the parties concerned in a common-law marriage declared—

"'We are man and wife, and will continue to be man and wife'; and it appears that thereafter they cohabited and otherwise lived together as such. They publicly acknowledged each other as husband and wife, assumed marriage rights, duties, and obligations,'and were generally reputed to be husband and wife in the community." (p. 599.)

In *Meister v. Moore,* 96 U. S. 76, 96 L. Ed. 826, the supreme court quoted approvingly from an opinion by Judge Cooley in *Hutchins v. Kimmell,* 31 Mich. 126, 130, in part, thus: .

"'Whatever the form of ceremony, or even if all ceremony was dispensed with, if the parties agreed presently to take each other for husband and wife, and from that time live together *professedly* in that relation, proof of these facts would be sufficient to constitute proof of a marriage binding upon the parties, and which would subject them and others to legal penalties for a disregard of its obligations.'" (p. 82.)

In 1 Bishop on Marriage and Divorce (6th ed.), 222, 223, it is said:

"Habit and repute do not create the marriage. But it exists where, on the parties cohabiting as husband and wife, and being accepted in society and reputed as such, they are presumed, *prima facie,* to be married. . . . It is a holding forth to the world, by the manner of daily life, by conduct, demeanor, and habit, that the man and woman who live together have agreed to take each other in marriage, and to stand in the mutual relation of husband and wife; and, when credit is given by those among whom they live, by their relatives, neighbors, friends, and acquaintances, to these representations and this continued conduct, then habit and repute arise, and attend upon the cohabitation."

In *Hulett v. Carey,* 66 Minn. 327, it was held that at common law no holding out to the public was necessary to the validity of a common-law marriage, but that learned court was careful to say that the fact of secrecy might be evidence that no marriage ever took place. See, also, *Dalrymple v. Dalrymple,* 2 Hag. Con. 54; Id. 161 Eng. Rep. Reprint, 665 *et seq.*

This conclusion necessarily disposes of the other questions presented in this appeal. The judgment is affirmed.