No. 29,616.

ELSIE M. JACOBY, *Appellee,* v. GEORGE JACOBY, *Appellant.*

(294 Pac. 857.)

Opinion filed January 10, 1931.

*George W. Littick,* of Kansas City, for the appellant.
*Harriet Parks Kirby,* of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for a divorce.

Plaintiff alleged that a common-law marriage had existed between herself and defendant since January 1, 1928, until the filing of this action. She charged defendant with extreme cruelty and other marital delinquencies.

Defendant denied the existence of the alleged common-law marriage, but pleaded that for a long time plaintiff had remained in the home of defendant, performing the duties of a housekeeper, and "that an illicit intimacy existed between them that was merely of a lustful nature." Other allegations of the answer were that plaintiff kept company with other men by day and by night, and when he complained of her neglecting his home she would answer "that it was none of his business; she would go as she pleased and do as she chose, and was her own boss." Defendant alleged various other delinquencies on the part of plaintiff; that she had committed adultery with various and divers persons at various and divers times and places; and that she had deceived defendant into the belief that she would marry him, and had thereby induced him to execute a deed conveying to her certain real estate in Armourdale.

Defendant's answer concluded with a special plea that—

"If the court find that plaintiff and defendant were, in fact and in law, man and wife, plaintiff is not entitled to any equitable relief or decreeing her the property, as plaintiff obtained title to same through fraud and deceit, and without consideration except her promise to marry him."

The trial court heard the cause at length, found all the issues in favor of plaintiff, granted her a divorce, and confirmed to her certain real property which defendant had conveyed to plaintiff.

Defendant appeals, assigning various errors which will be noted in the order they are argued in his brief.

He first contends that incompetent testimony was admitted in the examination of plaintiff, where the record recites:

"Q. Have you and George Jacoby lived together and held yourselves out to be husband and wife, as 'Mr. and Mrs. George Jacoby'?

". . . Objected to as a conclusion.

"By the Court. The first part is. She may answer if they lived together—the rest is objectionable. A. Yes."

Defendant's objection to this question is that it called for a conclusion. We think not. It required a categorical answer to a question of prime importance under the issues in this lawsuit. Indeed, the court's ruling was more favorable to defendant than it needed to be. A proper objection to the question would have been that it was dual in character, and should have been formulated into two questions, (1) had the parties lived together, and (2) had they held themselves out as husband and wife.

Complaint is next made against a ruling of the trial court concerning evidence sought to be developed while defendant was on the witness stand. He had testified that plaintiff had told him that she had lived with a man named Fredericks about four years prior to the time she began to consort with defendant. The record recites.

"Q. What, if anything, did she say about the course of her life?

"Objected to by plaintiff as leading.

"The Court: It is not only leading; it is rather immaterial. You cannot go back. There is no such thing as a common-law marriage in Missouri. The Missouri law does not recognize it. So far as living with this man, she could not have been his wife by the common law, so I say that is really immaterial."

Defendant's point is that as there was no proof offered touching the law of Missouri it should have been presumed to be the same as the law of the forum. Be that as it may, it was quite immaterial what was the course of plaintiff's life four years before the alleged marital relationship between plaintiff and defendant was established. Furthermore, in plaintiff's abstract we do not find that the court's attention was directed to this trial error as the code requires in a motion for a new trial (R. S. 60-3004). It is

therefore unavailing in this appeal. (*Peoples State Bank v. Hoisington Mercantile Ass'n*, 118 Kan. 61, 68, 69, 234 Pac. 71; *State v. Collins*, 126 Kan. 17, 266 Pac. 937.) Indeed, it is not shown that there was any motion for a new trial or what were its contents if one was timely filed and properly presented.

Defendant next presents and argues three contentions together: that plaintiff did not prove her case, that a demurrer to her evidence should have been sustained, and that she was married to another man at all times mentioned in the trial.

We think plaintiff's evidence was quite sufficient—assuming it was worthy of credence, which was the concern of the trial court, not ours—to prove the existence of a common-law marriage between the parties if there was no legal impediment to the creation of that status. The evidence which the trial court chose to believe tended abundantly to show that plaintiff and defendant agreed to a marriage and that they did assume that relationship. Defendant introduced plaintiff to his relatives and to other persons as his wife and gave her his name. The record reads:

"Q. Did Mr. Jacoby introduce you to any other people as 'Mrs. Jacoby'? A. Yes; he introduced me to Mr. Faeth.

"Q. Who else? A. John Jacoby and Mrs. John Jacoby and Mrs. Jacoby's mother.

"THE COURT: What was the form of introduction? What did he say? Under what name did he introduce you? A. Mrs. Jacoby, my wife, and Mr. Faeth congratulated me—asked him, 'Is that your new wife?' and Mr. Jacoby says, 'Yes.'

"Q. Had he ever introduced you to anyone under any other name except 'Mrs. Jacoby'? A. Never."

Defendant contracted for a piece of property to be conveyed to these litigants as "George and Elsie M. Jacoby, husband and wife"; he caused the formerly designated beneficiary of an insurance policy held by him to be changed and to name plaintiff as beneficiary therein; he deeded to her certain Armourdale realty "from George Jacoby, husband of grantee, to Elsie Bane Jacoby." It was also shown that a domestic disruption of these litigants had found its way into court, but was composed by another deed to the same realty, in the body of which was this recital:

"Grantee is wife of the grantor and grantor gives entire title to said property to grantee as per stipulation filed in district court and confirms same as prenuptial contract heretofore made and relinquishes all right, title and interest that he has ever had in said property."

This deed was executed and acknowledged by the defendant on April 19, 1929, only a few months before the present action was begun. Without further recapitulation of the evidence this court holds that the trial court's ruling on the demurrer to the plaintiff's evidence and on the general issue touching the existence of the common-law marriage was correct so far as it is practicable to test such rulings on appeal, and that the evidence to which the trial court gave credence established the existence of a common-law marriage. (*Renfrow v. Renfrow*, 60 Kan. 277, 56 Pac. 534; *Butler v. Butler*, 130 Kan. 186, 190, 285 Pac. 627.) But it is contended that during the time plaintiff and defendant lived together as husband and wife she was actually the wife of a man named Bane, whom she had married some years ago. No such allegation of fact was pleaded in defendant's answer—although he pleaded various defenses which he wholly failed to establish. The fact of her former marriage to Bane came out in the cross-examination of plaintiff. The abstract reads:

"Plaintiff married twice.

"Q. Who to? A. Mr. Young and Mr. Bane. Young is dead and Bane divorced. Married to Mr. Bane, Kensington, Kan. Got a divorce himself in 1926 in Ohio.

"Q. How do you know? A. Why, we had the papers.

"Q. Have you got them with you? A. No, I have not.

. . . . . . . . . . . . . . .

"Q. You say he was divorced in 1926 in Ohio? A. Yes.

"Q. What court, what county; do you know? A. I don't remember.

"Q. Serve any papers on you? A. Yes; I signed the papers and sent them back.

"Q. You mean you signed the decree? A. I signed some papers that he had sued me for divorce. I was not to contest it.

"Q. You got the divorce by agreement? A. Yes. (Next answer)—Haven't seen him since.

"Q. As a matter of fact, you don't know whether he got it or not. A. Yes, I have written to him, and I know.

"Q. You don't know anything about it except this letter? A. I know the papers were signed.

"Q. That was the agreement you would not cross file him and he would get the divorce? A. For desertion, yes."

Defendant contends that this testimony is not sufficient to prove that the divorce was granted. Coming up merely on cross-examination, where the plaintiff had not been apprised in advance that the validity of her Ohio divorce would be called in question, the witness, considering her circumscribed education and mode of life,

acquitted herself quite well. She testified positively that her former husband had procured a divorce in Ohio in 1926; that she had written to him and knew such to be the fact. That she did not know the details inquired of concerning the divorce did not prove that she was still married to her former husband. (*Shepard v. Carter*, 86 Kan. 125, 119 Pac. 533.)

There is nothing further to consider in this case. From first to last this lawsuit was simply a debate over disputed facts. Plaintiff won that debate before the fact-finding tribunal authorized to adjudicate such controversies; and as the record contains no error, the judgment must be affirmed. It is so ordered.