No. 43,725

Pearl Gillaspie, *Appellee,* v. E. W. Blair Construction Company, Trinity Universal Insurance Company, *Appellants.*

(388 P. 2d 647)

Opinion filed January 25, 1964.

*Herbert A. Marshall,* of Topeka, argued the cause, and *Allen Meyers* and *Doral H. Hawks,* of Topeka, were with him on the briefs for appellants.

*William K. Ong,* of Fort Smith, Arkansas, and *T. M. Murrell, George A. Scott* and *Jack A. Quinlan,* of Topeka, were on the briefs for appellee.

The opinion of the court was delivered by

Fatzer, J.: In this workmen's compensation case the claimant, Pearl Gillaspie, sought death benefits on account of the death of Clyde J. Gillaspie. Claim was also made by three minor children, Jerry C. Gillaspie, born April 10, 1943, Roger Gillaspie, born May 3, 1944, and Donna L. Gillaspie, born May 31, 1946.

The appellant-respondents do not challenge the right of the three minor children to compensation but contend that Pearl Gillaspie was not the legal widow of the decedent within the meaning of the workmen's compensation act. (G. S. 1949, 44-508 [*j*].) At the hearing before the workmen's compensation examiner, the parties stipulated that the decedent sustained personal injury by accident arising out of and in the couse of his employment with respondents on March 3, 1962, and that death resulted on that day from the accident; that the parties were governed by the workmen's compensation act and that the average annual wages of the decedent were sufficient for the maximum award; that decedent was divorced from Betty Gillaspie on April 14, 1960, there being the three minor

children of that marriage heretofore named; that decedent was under order of the district court of Gove County to pay support for each of the children at the rate of $45 per month; that the accident and death occurred in Coffey County, and that notice and written claim for compensation were timely filed.

Pearl Gillaspie testified that she commenced living with Gillaspie on June 4, 1961, at Hiawatha; that during the period she lived with him she was totally dependent upon him for her livelihood; that although a marriage ceremony was never performed, she regarded herself as Gillaspie's wife and that she and Gillaspie held themselves out as husband and wife and lived together as husband and wife from June 4, 1961, until his death; that they had planned to go to Las Vegas in January, 1962, to have a marriage ceremony performed, and continue on to California to visit Gillaspie's parents but that working conditions required continual postponement; that the decedent always introduced her as his wife to members of his family as well as his friends and acquaintances; that Gillaspie told his parents and the three minor children that they were married; that she used the name of Pearl Gillaspie or Mrs. Clyde J. Gillaspie on their joint checking account and bills to the family were so made out; that the joint checking account was in The Peoples National Bank of Burlington in the name of Pearl Gillaspie and Clyde Gillaspie or the survivor of them and each of the parties issued checks against the account, which were honored in due course by the bank; that she had been divorced from D. N. Cheek, Jr., on May 28, 1961, in Labette County, and that to her knowledge no one knew prior to the accident and death on March 3, 1962, that she and Gillaspie had not been legally united in a marriage ceremony.

There was evidence by other witnesses who testified for the claimant that they had known Pearl Gillaspie and the decedent for some time; that Gillaspie had introduced Pearl to them as his wife, and they always understood the Gillaspies were husband and wife; that Gillaspie publicly held Pearl out to be his wife, and they appeared to be happily married and were not separated at any time; that Gillaspie claimed Pearl as his wife for income tax purposes on the company records, and they signed the 1961 income tax returns and filed them with the proper authorities, using the names of Clyde Gillaspie and Pearl Gillaspie, and that the state

of Kansas issued to Pearl Gillaspie upon her application a Kansas operator's license and a fishing license during the year 1961.

Pearl was recalled as a witness for the minor children and testified she knew the decedent was making support payments for the children; that Jerry Gillaspie was married on March 12, 1962; that Roger Gillaspie was married on August 18, 1962, and that Donna L. Gillaspie was living with her mother, Betty Gillaspie. During her testimony she was asked the following questions and she made the following answers:

"Q. Did you and your husband mutually assent that you were husband and wife?

"A. Yes.

"Q. Notwithstanding the fact that you did not have a legal ceremony?

"A. Yes.

"Q. I don't remember if I ever asked you or not. Did you perform all the functions as required of you as his wife between June 4, 1961, and March 3rd?

"A. Yes.

"Q. Did you ever speak of each other in privacy of each other as husband and wife?

"A. Yes."

Pertinent findings of the workmen's compensation examiner are quoted:

"In addition to the stipulations of the parties, it is by the Examiner found that from and after June 4, 1961, until the death of Clyde J. Gillaspie, said Clyde J. Gillaspie and Pearl Gillaspie did mutually assent to be husband and wife together, and that their intention to have a marriage ceremony performed at some time in the future was not a condition in the mind of either party to such assent; that the parties lacked capacity to become husband and wife until six months following May 28, 1961, but that with the ripening of such capacity, the elements of capacity and mutual present assent and intent to be husband and wife were joined and a valid common-law marriage then and there arose and continued to exist until the death of Clyde J. Gillaspie on March 3, 1962. . . ."

Accordingly, an award of workmen's compensation was made in favor of Pearl Gillaspie and the minor children against the respondents for total death benefits.

On appeal, the district court, after considering the evidence, the argument of counsel and the briefs submitted, found there was sufficient evidence to support the finding of the workmen's compensation examiner. Judgment was entered in favor of Pearl Gillaspie and the minor children in accordance with those findings and the award of the workmen's compensation director, and respondents were ordered to pay the costs.

Was Pearl Gillaspie the legal widow of the decedent within the meaning of G. S. 1949, 44-508 (*j*)? The pertinent portion of that statute reads:

"'Dependents' means such members of the workman's family as were wholly or in part dependent upon the workman at the time of the accident. 'Members of a family,' for the purpose of this act, means only legal widow or husband, as the case may be, and children. . . ."

The question poses another question: Was there a common-law marriage? The respondents argue that at most the claimant's evidence showed she and Gillaspie lived together as man and wife at a time when she knew they could not be married because of the six months' disability (G. S. 1949, 60-1512), and that after her disability was removed, they lived together as a matter of convenience to each other until such time as they could be married in the future, and cite and rely upon *Pitney v. Pitney*, 151 Kan. 848, 101 P. 2d 933. The argument is wide of the mark. Kansas has long recognized the validity of common-law marriage. It is not necessary that we here detail the various elements of proof to establish the existence of the marriage, but it may be said the basic elements essential in creation of such a relationship are a capacity to marry, a present marriage agreement, and a holding out of each other to the public as husband and wife. (*State v. Hughes*, 35 Kan. 626, 12 Pac. 28, 57 Am. Rep. 195; *State v. Walker*, 36 Kan. 297, 13 Pac. 279; *Shorten v. Judd*, 60 Kan. 73, 55 Pac. 286, *Tyner v. Schoonover*, 79 Kan. 573, 100 Pac. 478; *Butler v. Butler*, 130 Kan. 186, 285 Pac. 627; *Jacoby v. Jacoby*, 132 Kan. 77, 294 Pac. 857; *Freeman v. Fowler Packing Co.*, 135 Kan. 378, 11 P. 2d 276; *Knollenberg v. Meyer*, 151 Kan. 768, 100 P. 2d 746; *Cain v. Cain*, 160 Kan. 672, 165 P. 2d 221; *Smith v. Smith*, 161 Kan. 1, 3, 165 P. 2d 593; *In re Estate of Freeman*, 171 Kan. 211, 231 P. 2d 261; *Burnett v. Burnett*, 192 Kan. 247, 387 P. 2d 195. The Pitney case, *supra*, is not helpful to respondents. There it was held that the findings of the trial court and the testimony of the plaintiff established that the parties had lived together in the same house as man and wife but that throughout the relationship the man had promised to have a marriage ceremony performed in the future. There was no present contract. There was also a failure of proof of any holding of each other out to the public as husband and wife. (*Cain v. Cain*, supra.)

In the instant case the district court found there was a valid common-law marriage, and the evidence abundantly sustains the

finding. The claimant was divorced from her former husband on May 28, 1961. Six days later, on June 4, 1961, she and Gillaspie presently agreed to be married despite the fact no marriage ceremony was performed. Pearl's union with Gillaspie was entered into in good faith and cohabitation was genuinely matrimonial in its inception on the part of both. They publicly acknowledged each other as husband and wife, assumed marriage rights, duties and obligations and were reputed to be husband and wife in the communities in which they lived. While the marriage of Pearl and Gillaspie was of no legal effect in the first instance (G. S. 1949, 60-1512), persistence of the relation after Pearl's disability was removed on November 28, 1961, made them husband and wife under the common law without further proof of a new express exchange of consent. (*Matney v. Linn*, 59 Kan. 613, 54 Pac. 668; *Renfrow v. Renfrow*, 60 Kan. 277, 56 Pac. 534; *Schuchart v. Scuchart*, 61 Kan. 597, 60 Pac. 311, 50 L. R. A. 180, 78 Am. St. Rep. 342; *Freeman v. Fowler Packing Co.*, supra; *Haywood v. Nichols*, 99 Kan. 138, 160 Pac. 982; *Peters v. Peters*, 177 Kan. 100, 276 P. 2d 302.) The fact that the parties may have intended to have a marriage ceremony performed in the future at Las Vegas becomes immaterial. At Gillaspie's death Pearl became his widow.

In *Scuchart v. Scuchart*, supra, it was held:

"A man and woman were formally married when one of them was under disability because of a decree of divorce previously granted had not become effective. Both intended in good faith to assume the marital relation, and after the disability was removed they decided and did continue to live together as husband and wife without the performance of another marriage ceremony. *Held*, that the facts stated were sufficient to establish a common-law marriage and to make them husband and wife after the disability was removed."

In *Burnett v. Burnett*, supra, it was said:

"This court has held in numerous cases that where the parties continue to live together as husband and wife after the marriage restrictions are removed they become husband and wife in fact under the common law." (l. c. 250.)

We are not without precedent in applying Section 44-508 (*j*) to the rights of a woman who, on the date of her husband's death, was married to him by a marital contract recognized as valid under the laws of the state of Kansas. In *Freeman v. Fowler Packing Co.*, supra, Thelma Freeman claimed compensation for death of her husband which occurred on September 13, 1930. She was divorced from a former husband on March 23, 1929. Two weeks later, on

April 5, 1929, she married Benson Freeman, the workman, in Kansas, contrary to the statute (G. S. 1949, 60-1512) providing that marriage within six months after divorce is bigamous and void. It was held the claimant-wife was the "legal widow" within the meaning of Section 44-508 (*j*). In the opinion it was said:

"The result is, the formal marriage of Thelma and Benson Freeman was void. They continued, however, to live together as husband and wife after expiration of the six months' period, and were so living together at the time of his death, which occurred on September 13, 1930. This being true, after the time elapsed within which Thelma was forbidden to marry, she was Benson's common-law wife (*Renfrow v. Renfrow*, 60 Kan. 277, 56 Pac. 534), and at his death she became his widow."

.    .    .    .    .    .    .    .    .    .    .    .    .

"In 1927 the statute was amended by inserting the word 'legal' before the word 'widow.' (R. S. 1931 Supp. 44-508 [*j*].) The word 'legal' has a variety of meanings: conforming to law; according to law; required or permitted by law; not forbidden or discountenanced by law. (Black's Law Dictionary.) The word also means 'good and effectual in law,' and in that sense Thelma was Benson's legal widow.

"In many instances it would be insufferably unjust to deny compensation to the survivor of a common-law marriage. If the legislature intended to do that, it would have been easy to express the intention in unambiguous terms. Under these circumstances, the court conceives the purpose of the amendment to have been to deny compensation to any survivor who cannot show a marriage which the law recognizes, and to deny compensation to the survivor of a marriage contracted according to formal legal requirements, but in fact of no legal effect. A marriage declared by statute to be incestuous, as between first cousins, is an example. Another example is the marriage of Thelma and Benson during the period within which the law did not recognize it as valid for any purpose. This interpretation gives to the word 'legal' a meaning not merely technically correct, but correct according to approved usage in lay speech (R. S. 77-201, *Second*), allows scope for operation of the statute, and avoids undue severity of result in application." (1. c. 379, 380.)

In *Peters v. Peters*, supra, the deceased workman, James Peters, was divorced from a former wife on September 3, 1952. Approximately three months later, on December 4, 1952, he married Venita Fae Peters in Missouri. They returned to Kansas and lived together as husband and wife in Bazine, and were so living together when he was accidentally electrocuted on January 20, 1953. On the date of his death, Venita was pregnant with his child, conceived during the relationship. It was held that since death occurred within the six-month period barring the workman's legal marriage to Venita, the formal marriage in Missouri was void and she was not his common-law wife and was not his legal widow at

his death. After citing and quoting from *Freeman v. Fowler Packing Co.*, supra, the court, speaking through the present chief justice, said:

"Thus it appears in the Freeman case, that if the workman had died within the six months' period, this court would have denied recovery to the woman there involved on the basis she was not his legal widow, within the meaning of that term as used in the statute. The fact, as is pointed out, the marriage ceremony was performed in Kansas affords no sound basis for distinguishing the foregoing case from the one at bar. The opinion makes no such distinction. Neither does our statute. As we analyze the case the result reached, insofar as it pertains to the force and effect to be given our Workmen's Compensation Act, and in particular 44-508 (*j*), would have been the same if the marriage ceremony had been performed in Missouri." (l. c. 108.)

Likewise here. The fact Pearl's marriage to Gillaspie was a common-law marriage places it in no different posture than the marriage ceremony in either the Freeman or Peters case. In *State, ex rel., v. Anderson,* 114 Kan. 297, 217 Pac. 327, it was said that because marriage is a common right, it is the policy of the state to encourage it and that,

"The matrimonial status of a man and woman living together as husband and wife is not annulled by their failure to comply with the terms of a statute declaring it to be their duty to appear before an officer and formally solemnize their marriage. They may be liable for the penalties for neglect to follow the requirements of the statute, but their relations are not nullified thereby. (*Renfrow v. Renfrow,* 60 Kan. 227, 56 Pac. 534.)" (l. c. 303.)

Since Pearl and Gillaspie continued to live together as husband and wife after the expiration of the six-month period, we hold that she was his wife under a form of marriage contract which the law recognizes as valid and at his death she was his "legal widow" within the meaning of G. S. 1949, 44-508 (*j*).

The judgment is affirmed.

Jackson, J., not participating.